<div style="float:left">PELL<br>*vs*<br>LANDER.<br><br>writ of error for<br>failure to have<br>such revivor.</div>

*J. & W. L. Harlan* for plaintiff; *Cates* for defendant.

---

<div style="float:left">CHANCERY.<br><br>Case 140.<br><br><br>September 22.<br><br>Case stated.</div>

## Pell *vs* Lander.

### ERROR TO THE LIVINGSTON CIRCUIT.

*Execution sales of land.    Equity jurisdiction.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

LANDER having purchased, at the price of $400, a part of lot No. 12, in the town of Smithland, under execution against Pell, but subject to redemption within one year, several other executions against Pell were afterwards, within the year, levied upon various lots, and among them, on his right of redemption in this lot, No. 12. Among these latter executions was one in favor of S. Patterson, which was assigned to Lander, who also had the control, as attorney or otherwise, of some or all of the others. On the day appointed for the sale of these lots, and as it seems, just as the sale was commencing, Pell obtained an order from two Justices of the Peace, enjoining further proceedings on the execution of Patterson, until the matters of the bill should be heard, and offered to execute the bond with security, requisite to give effect to the injunction. But the clerk being engaged in entering the proceedings of the Circuit Court, then in session, did not then take time to write the bond, but being informed that the sale was going on at the door of the Court house, went to the Sheriff, with the bill and order for injunction in his hand,

and exhibiting them, informed him of his inability then to prepare the bond, and of Pell's offer and readiness to execute it with security. He understood from the Sheriff, that he would delay the sale under Patterson's execution. Lander was present and probably heard this conversation, but gave no assent to any postponement. And after the other lots had been sold, the Sheriff, upon Lander's direction, went on to sell the right of redemption in the lot No. 12, in satisfaction of the execution of Patterson, and of the balance on two others. Lander became the purchaser of this right at the price of $C05, the part of the lot which was sold having been valued at $3,000. This sale was concluded about twenty five minutes before three o'clock, and while it was going on, the clerk being pressed by Pell, took time, on application to the Court, to prepare the bond, &c., but it was not executed and there was no injunction until after the sale was completed.

After this sale, but within the year from the first sale, Pell tendered to Lander, in redemption of the lot No. 12, the amount of his bid at the first sale, with ten per cent. thereon, which was refused. And Pell afterwards filed the present bill, in which he prayed that the sale of the right of redemption might be set aside, and for general relief, relying mainly, upon the foregoing facts, and setting forth others connected with them, which it is not necessary to state. During the pendency of this suit, the first bill enjoining Patterson's execution, of which the equity had been denied by the answer, was dismissed by Pell, and a cross bill was filed in this case by Lander, alledging that Pell had remained in possession of the lot No. 12, and praying a decree for rents and for general relief.

On the hearing, the Court dismissed the bill of Pell, and upon the cross bill of Lander, decreed that he be quieted in his title to that part of lot No. 12, which he had purchased and that Pell should pay him $800 rent therefor, from the date of the second purchase, and should also surrender the possession to him. Pell complains of error in the dismissal of his bill, and in the relief granted on the cross bill.

1. We are of opinion there was no error in dismissing the bill of Pell. Even if the injunction against Patterson's execution had been perfected and obeyed, the right of redemption in lot No. 12, must have been sold to satisfy the other executions. And there is no reason to suppose that it would, in that case, have brought more than it was actually sold for. But the presumption is, that it would have brought less. As Pell does not pretend that he would or could have done any thing to prevent the sale for the satisfaction of the other executions, it is clear that his right of redemption must have passed from him, and he could have claimed nothing more than the excess of the price above the executions to be satisfied. Supposing him to have had an equitable right to this excess, the only way in which he could have sustained an injury in the sale, must have been in the diminution of the excess—that is in some circumstance which might have prevented or discouraged competition in the bidding, and thus have tended to reduce the proceeds of the sale. But he has not only failed to show that the proceeds would probably have been greater than they were, if the inchoate injunction had been regarded and Patterson's execution left out in offering the lot for sale, but has also failed to show that as against Patterson, he was entitled to the excess of the proceeds above the amount of the other executions. For upon his injunction bill and the answer, there was no equity in his case, and his bill was in fact, dismissed. Then we cannot say that the course which Lander and the Sheriff pursued, has occasioned any loss to Pell which should entitle him, on that ground, to the aid of a Court of equity; and his case rests upon the enquiry whether there was such a violation of the authority of the Court or of the law, or such departure from good faith in the course pursued, as to call for the action of the Court.

An order for injunction to a sale under execution, is not effectual until the execution of the bond required by the order.

Upon the first point it is sufficient to say that even if the Justices had authority to issue the order for an injunction during the session of the Court, it was wholly inefficacious until the required bond should be executed; that there was, in fact, no injunction until after the sale;

that it was a mere question of courtesy and discretion with the Sheriff, whether he would pay any regard to the simple order for an injunction, and how long he would wait for it to be made effectual; and that there was, of course, no violation of the authority of the law or of the Court, in desregarding this order, which was properly directed to the clerk and not to the Sheriff or the party. Nor does it appear that there was any violation of good faith on the part either of Lander or of the Sheriff, which can give merit to the complainant's case. It has already been said that he has shown no loss arising from their conduct. But besides this, the Sheriff made no promise and could not properly have made one, that he would regard the order as an absolute and effectual injunction. He was bound to make sale under the other executions, and he was bound to make it under that of Patterson, unless restrained by an effectual order or process. He did, in fact, postpone the sale of the lot No. 12, of which the proceeds were applied to Patterson's execution, until the last. It does not appear that there was not ample time between the clerk's application to him and the completion of this sale, for the bond to have been prepared and the injunction issued, which might have been done in that interval just as conveniently as when it was done. And it does not appear that he promised to wait any particular length of time. Nor could he have been expected to run any hazard of losing the opportunity of selling within the usual hours on that day, or to depart from the usual course of proceeding without the consent of Lander or others having control of the executions. And although Lander may have heard what passed between him and the clerk, he was not consulted, nor did he give any assent to a postponement, nor is it certain that he was aware that any further delay was expected than that which actually occurred. Moreover, the whole proceeding was conducted publicly at the Court house door. Pell might and should have known every part of its progress. He might, at any moment, have obtained leave of the Court for the clerk to prepare the bond; and might, if necessary and proper in his case,

have obtained an order to the Sheriff to suspend the sale for the purpose. And as the facts constituting the equity set up in his bill were known to him long before the execution issued, it was in truth, owing to his own negligence or design, that his injunction had not been obtained and made effectual before the day of sale. Without, however, assuming the existance of any improper motive on his part for the delay or for obtaining the injunction from the Justices instead of the Court, we are of opinion that he has shown no sufficient ground for any relief against the sale of the right of redemption; and that this right having been effectually sold, his offer to redeem even if he had tendered the amount bid for the lot No. 12 at both sales, was of no avail. The decree dismissing his bill is, therefore, affirmed.

The remedy of a purchaser of land under execution, obtaining possession and *mesne profits*, is complete at law in ordinary cases.

But it seems that the Court erred in the relief granted to Lander upon the cross bill. The decree is in the nature of the specific execution of a contract for the sale of land. But there was no contract between Lander and Pell. The purchases by Lander were made under executions issued on judgments of a Court of law. His remedy for completing his purchase and recovering the possession and *mesne profits* was complete at law, and not properly cognizable in a Court of equity, unless under extraordinary circumstances. There was no injunction against that remedy. And if it be conceded that as a defendant in equity he could properly set up legal rights pertaining to the subject matter of the bill, still the decree for the possession and for rents, was inadmissible, unless he had the legal title, or obtained it by the decree. He does not appear to have obtained a conveyance from the Sheriff or any one else. And if the decree quieting his title, be understood as a decree for title which should have been obtained from the Sheriff, who is no party, still we are of opinion that he should have been remitted to his remedy at law, because, although the circumstances under which his purchase of the right of redemption was made, are not sufficient to authorize the Chancellor to deprive him of the benefit of that purchase, by injunction, which would virtually rescind it, yet do present a case of hardship and inequali-

ty which should induce the Chancellor, under the discretion which he exercises in such cases, to refuse his aid for the specific enforcement of the purchase. And the reason for so doing is stronger in this case than in the case of an executory contract between individual parties, because in this case the remedy at law, as well as in equity, secures a specific execution. The hardship and inequality of the transaction, are apparent from the facts already stated, and especially from the fact, that the decree gives to Lander the lot which he purchased, at about one third of its value, and besides that, the rent for about three years, to an amount almost equal to the price which he gave. Without entering into the question, whether the sum decreed for rent is too high, we are of opinion, for the reasons above stated, that no relief should have been given on the cross bill.

Wherefore, the decree on the cross bill of Lander, is reversed, and the cause is remanded, with directions to dismiss the same without prejudice. And Pell is entitled to the costs in this Court.

*J. & W. L. Harlan* for plaintiff; *Cates, Craddock and Husbands* for defendant.