## Augustus D. Griswold v. Hernando A. Fuller and others.

*Equity jurisprudence: Bill to quiet title: Judicial sale: Title of complainant.*
A bill to remove a cloud from the title to lands, which deduces complainant's title through a judicial sale, cannot be sustained where the proceedings which were the basis of such sale, and upon which the validity of complainant's title depends, are shown to be void for jurisdictional defects.

*Equity jurisprudence: Sale of lands to satisfy debts: Execution: Levy.* Courts of equity have no authority, upon a bill by a judgment creditor alleging that his debtor became vested with the legal title to lands, and that by certain subsequent void proceedings an ostensible but invalid title, which was a mere cover and not a valid interest, had been conferred on third persons named, who in law held only as trustees for such debtor, in the absence of any averment or showing of an execution levy upon the lands in his favor, to decree the sale of such lands for the satisfaction of the judgment.

*Transfer of legal title: Equitable rights: Equity jurisprudence.* While mere equitable rights and titles may in suitable cases be made available by a direct proceeding in equity to satisfy judgments, through a receiver or otherwise, the transfer of the legal title to land, through the immediate power of the court, where no lien has been previously obtained, in order to satisfy judgment creditors, is not an attribute of the traditionary jurisdiction of equity, nor is any such authority conferred by our statutes.

*Decree: Judicial sales: Notice: Description: Sales by parcels.* Under a decree authorizing a sale of lands by a commissioner upon public notice "according to the course and practice" of the court, "in such convenient and reasonable parcels" as in his opinion should be most conducive to the interest of all the parties, a sale upon a notice which fails to give any description of the lands, and by putting up and striking off numerous distinct bodies upon one offer and bid, is unwarranted and illegal.

*Heard January 6.     Decided January 18.*

Appeal in Chancery from Muskegon Circuit.

*Eggleston & Kleinhans* and *Jacob Ferris,* for complainant.

*E. Gould* and *C. I. Walker,* for defendants.

GRAVES, J:

Complainant claims to own and be in possession of numerous large tracts of land in different counties in this state, and which land he alleges defendants are seeking to subject

for debts of the Detroit & Milwaukee Railway Co. as property of the latter, and which proceedings he avers becloud his title and impair his equitable rights.

He deduces his title from a decree of the circuit court for the county of Oakland in chancery, made on the 8th of December, 1863, and entered on the 18th of January, 1864, in a suit brought by Morgan L. Drake against the Detroit & Milwaukee Railway Co. and others, and upon a sale made thereunder by a circuit court commissioner for the county of Oakland, on the 25th of April, 1864, and the order to confirm the same, dated May 7th thereafter.

Whatever, therefore, may be said in regard to other aspects of the case, he cannot have relief unless title to the land was obtained through these proceedings, and if the proceedings were actually defective and invalid on jurisdictional grounds, then no title was obtained.

The defendants urge that there were many such jurisdictional defects, and therefore that the present bill was rightly dismissed by the court below.

The term "want of jurisdiction" is used in equity tribunals in different senses.

Sometimes it is conventionally applied, and means no more than this: that the litigation is not launched in such manner as to make it regular for the court to take cognizance of it, or that the proceedings, although well enough begun, are not so shaped or proceeded in as to make it proper to allow relief, or some particular relief in question; and yet it is well understood that if cognizance of the controversy is taken in the one case, or if the court allows some relief, or the particular relief, in the other, the action had must bind unless set aside in some direct proceeding.

There is no need to mention cases to illustrate this, because they must be familiar to all. But apart from cases within this principle we recognize those cases where the defects or miscarriages are so vital or far reaching that the proceeding is *positively bad*, and does not require to be formally set aside in order to prevent its having operation as

something of lawful force.    Every court is in some way
limited in its powers.    There must be certain conditions on
which the right to act depends; and in most cases, cer-
tainly, the absence of these necessary conditions must deprive
the act, if done, of all legal force.    When the act is not
merely an error or irregularity in the exercise of jurisdic-
tion, but consists in taking cognizance of a case or pro-
ceeding without any power to do so, or in doing something
which, on account of the character of the court, the nature
of the litigation, the subject matter and the aptitude of the
complaint, pleadings or issues, is absolutely beyond its legal
sphere of action or authority, or in positive derogation of
its competency, or in contravention of the power marked
out by law for its course of action, then, however well in-
tended in point of fact, the thing done amounts to usurpa-
tion, and cannot possess any binding force.

Now, when we read the record before us, we notice, in
the first place, that the decree in Drake's case was *pro con-
fesso*, and that there is no averment in the present bill, or
any proof in the record, that any defendant in Drake's case
was subpœnaed or notified in any form, neither does the
present bill state that any defendant appeared in that case.
But we do not rest on this.    We proceed to notice briefly
the nature of Drake's complaint *touching these lands* and
his position in court, in order to ascertain the foundation
and scope of the court's authority to decree *pro confesso*.

He claimed to be owner of a judgment for a large sum
against the Detroit & Milwaukee Railway Co., and he filed
his bill in the circuit court for the county of Oakland in
chancery, to obtain collection of it.    He alleged the recovery
of the judgment by other parties, its transfer to him, and
that executions had been issued in Oakland county and
returned *nulla bona*, except as to a small portion.

He made no charge, and there was no pretense, that any
of the lands in question had been levied on.    He however
alleged positively that these lands were "vested fully and
completely" in the company, but that by certain subsequent

void proceedings of the board of control and others, an ostensible but invalid title had been conferred on certain named persons, and that such ostensible title was a mere "cover," and not a valid interest, and that in fact these persons were only holding for the use of the company.

It is too plain to admit of question, that Drake's entire case, as made by his bill, concerning these lands, was framed and based exclusively on the theory and assumption that the company had previously acquired the legal title and was still the true owner, and that what had been done by and through the board of control with others had served to create an ostensible and colorable title merely, in the persons named, as trustees, and which was simply an obstacle in his way to the obtainment of a complete title by sale on execution at law on the judgment against the company.

With the case thus based and shaped in relation to these lands, the court in decreeing *pro confesso*, or in other words, in proceeding to decree when it could only do so within the precise limits of the case made by the bill, and upon the theory of an admission by the defendants of a right to just such relief, and no other, as the actual case stated by complainant authorized, did not keep within the bounds prescribed by the case, or even within the limits which would have existed if there had been a levy, but went on and ordered that the premises in question, or so much thereof as should be sufficient to raise the amount due, be sold at public auction under the direction of the circuit court commissioner for Oakland county, at the court house at Pontiac, upon "at least six weeks' public notice of the time and place of such sale, according *to the course and practice of this court;*" and further, among other things, that the lands should be so sold "in such convenient and reasonable parcels as *in the opinion of said commissioner* should be most conducive to the interest of all the parties."

The advertisement of the commissioner gave no specific description of the lands whatever. It mentioned the lands as being all sections and parts of sections denoted by odd

numbers within fifteen miles of the railroad between Owosso
and Grand Haven, which the United States owned on the
3d of June, 1856, and then suggested that a particular
description could be obtained from the commissioner, or by
referring to the register of the court.

The sales under which complainant claims title were
made on the strength of these proceedings, and numerous
tracts were offered in one body, and struck off together
upon the bid of a round sum.    Now it seems clear to us
that no change of title was produced by these proceedings.
There are several reasons for holding that the course taken
was without legal force to shift or impair the ownership, but
it does not seem needful to advert to more than one or two.

The case made by the bill, instead of placing the court
in a situation where it could, even through the commission
of an error within the scope of its jurisdiction, directly sub-
ject the lands to sale through its own process in order to
satisfy the judgment, excluded on its face all right in the
court to order any sale, or even to decree upon the question
of title to the lands.    If the lands vested in the company,
as this bill alleged, and the title was subsequently entangled,
but still virtually belonged to the company, as the bill
also alleged, a lien by levy was practicable, and was indis-
pensable for the purpose of founding a jurisdiction in a
court of equity to assist in compelling payment of the judg-
ment.    Upon the theory of the bill in other respects, if
there had been a levy, it would have been within the gen-
eral competency of the court to have removed the obstructions
in the way of the execution at law, but then it could reg-
ularly have gone no further than to afford such auxiliary
aid in so far as these lands were concerned.

As it was, there was no more authority to order the sale
of these lands by the commissioner to satisfy the judgment,
than there was to dissolve the corporation.    There was no
basis in the bill for it, and the authority was as much want-
ing as it would have been if no case at all had been pend-
ing.

GRISWOLD *v.* FULLER.

The transfer of legal title to land, through the immediate power of the court, where no lien has been previously obtained, in order to satisfy judgment creditors, is not an attribute of the traditionary jurisdiction of equity, and there is no statute in this state to authorize it. Mere equitable rights and titles may be directly dealt with, and in proper cases, and when necessary, made available to satisfy judgments, through a receiver or otherwise.

The assuming, in the case of Drake, to decree a sale of the lands by commissioner, was, we think, a plain excess of power, and one which involved a loss of jurisdiction to the extent of such excess. The act was void upon its face. No doubt as the decree was *pro confesso*, the learned judge, under whose authority it seems to have been allowed, inadvertently permitted the complainant to draw up and take at his peril such decree as he deemed the case warranted and himself entitled to. Indeed, we cannot avoid thinking that the decree was, in fact, such an one as the complainant saw fit to draw on the footing of the default, and that the court never gave it any strict examination at all.

There are difficulties likewise in the proceedings subsequent to the decree. The commissioner in advertising and in selling disregarded the directions in the decree in substantial particulars. He did so in omitting to give any description of the lands in his advertisement, and also, in spirit, in selling numerous distinct bodies upon one offer and bid.

It does not, however, appear necessary to dwell on this objection, or to notice others which are suggested by the record.

The decree of dismissal should be affirmed, with costs.

COOLEY, CH. J., and MARSTON, J., concurred.

CAMPBELL, J., did not sit in this case.