PHILLIP HORN, APPELLANT, V. JASON G. MILLER, APPELLEE.

1. **Appeal:** LIMITATIONS AS TO TIME. In actions in equity either party may appeal from the judgment or decree rendered or final order made by the district court to the supreme court. In order to do so the party appealing shall, within six months after the date of the rendition of the judgment or decree, procure from the clerk of the district court, and file in the office of the clerk of the supreme court, a certified transcript of the proceedings had in the cause in the district court.

2. ———: ———. The time within which to perfect such appeal begins to run at the date of the rendition of the judgment or decree, which is the date on which the court formally announces its conclusion and judgment, and not the date on which the clerk in vacation enters the judgment on the journal bearing the date of the annunciation by the court.

MOTION to dismiss appeal from Cass county district court.

*Marquett, Deweese & Hall,* for the motion.

*Samuel M. Chapman* and *George W. Covell,* contra.

REESE, J.

This is a motion to dismiss the appeal in this cause for the reason that the transcript was not filed in this court until more than six months had elapsed after the rendition of the decree.

The record shows that the cause was decided by the district court on the 29th day of April, 1884, and that the transcript was filed in this court on the 18th day of November of the same year—more than six months after the former date.

Upon the part of appellant it is shown by affidavit that the journal entry of the decree was not made by the clerk

until the 15th day of June, 1884, and upon a suggestion
of a diminution of the record a transcript of the proceed-
ings of December, 1885 term is filed showing the follow-
ing entry:

"Phillip Horn, Plaintiff,  ⎱ December term, A.D.
          v.               ⎰ 1885.
 Jason G. Miller, Defendant.

And now on this 19th day of December, 1885, it being
the 8th day of said December term, A.D. 1885, this cause
came on to be heard upon the motion filed herein, to amend
the record so as to show the true date of the entry and en-
rollment of the final order and decree in said cause, sup-
ported by the affidavits of the clerk of this court and of
Samuel M. Chapman, Esq. And the court being fully ad-
vised in the premises does find the facts set forth in said
application, and proofs offered in evidence in support of
said motion, to be true, and does order that said record be
made to show that said decree and judgment was entered
and made of record June 15th, 1884, and that said record
be entitled to full force and credit from June 15th, 1884,
that being the date of the entry of the same."

The original record and journal entry is in the usual
form and appears to have been entered on the 29th day of
April, 1884. After the title of the case the recital is as
follows:

"And now on this 29th day of April, A.D., 1884, it be-
ing the first day of said term of said court, this cause comes
on for hearing on the pleadings and evidence, and was sub-
mitted to the court; on consideration whereof," etc. Then
follows, in the usual form, the decree.

The single question presented is, when was the decree
rendered from which the time in which to appeal would
be given to run? If from April 29th, 1884, the motion
must be sustained. If from June 15th of the same year,
it must be overruled. We think clearly the former date.
If the decree was rendered of that date the subsequent ac-

tion of the court by another judge could not change the fact.

In *Nuckolls v. Irwin*, 2 Neb., 68, Judge CROUNSE, in writing the opinion of a majority of the court, uses the following forcible language: "The court, prefacing its judgment with the remark that no record of judgment appears, does not destroy the fact, if one did appear. We will suppose the court to have overlooked it, or to have been misled by counsel. To call a judgment a finding makes it none the less a judgment. A summons is not an execution nor an almanac a pleading, even if called so on authority of a court." If the decree was rendered on the 29th day of April, 1884, the proceedings of December 19th, 1885, could not change the fact.

But the facts in this case are conceded to be that the decree or decision of the district court was announced from the bench on the 29th of April, but that the journal entry was not written until the later date, at which time the court was not in session.

Bouvier, under the sub-head of Requisites of Judgment, says: "To be valid, a judicial judgment must be given by a competent judge or court at a time and place appointed by law, and in the form it requires." Now, if the court was not in session, or the judge not in the county, on the 15th of June, it can hardly be claimed that a judgment or decree could be rendered on that day.

"A judgment is the final determination of the rights of the parties in an action." Civil code, section 428. That determination must be made while the judge is present and the court in session. "All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action." Id., sec. 443.

"When the judicial acts or other proceedings of any court have not been regularly brought up and recorded by the clerk thereof, such court shall cause the same to be made up and recorded within such time as it may direct.

When they are made up, and upon examination found to
be correct, the presiding judge of such court shall subscribe
the same." Id., 447. This evidently includes judgments
and decrees. Section 675 provides: " That in actions in
equity either party may appeal from the judgment or de-
cree rendered, or final order made by the district court, to
the supreme court of the state; the party appealing shall,
within six months after the date of the rendition of the
judgment or the decree, or the making of the final order,
procure from the clerk of the district court, and file in the
office of the clerk of the supreme court, a certified tran-
script of the proceedings had in the cause in the district
court, containing the pleadings, the judgment or decree
rendered or final order made thereon, and all the deposi-
tions, testimony, and proofs offered in evidence on the hear-
ing of the cause, and have the said cause properly docketed
in the supreme court ; and on failure thereof the judgment
or decree rendered or the final order made in the district
court shall stand and be proceeded in as if no appeal had
been taken."

It must be observed that the transcript must be filed in
the supreme court within six months from the " date of
the rendition of the judgment or decree." That date was
April 29. The court must render the judgment or decree,
while the clerk, whose acts are ministerial only, must en-
ter them upon the records, thereby perpetuating the evi-
dence of the fact.

Rendering a judgment is the annunciation or declaring
the decision of the court indicated by the rule for judg-
ment. *Fleet v. Youngs,* 11 Wend., 528. See also *McCourt-
ney v. Fortune,* 42 Cal., 387.

In Freeman on Judgments it said that: " Expressions
occasionally find their way into reports and text-books in-
dicating that the entry is essential to the existence and
force of the judgment. These expressions have escaped
from their authors when writing of matters of evidence

and applying the general rule that in each case the best testimony which is capable of being produced must be received, to the exclusion of every means of proof less satisfactory and less authentic. The rendition of a judgment is a judicial act; its entry upon the record is merely ministerial. A judgment is not what is entered, but what is ordered and considered. The entry may express more or less than was directed by the court, or it may be neglected altogether; yet in neither of these cases is the judgment of the court any less *its* judgment than though it was accurately entered. In the very nature of things the act must be perfect before its history can be so; and the imperfection or neglect of its history fails to modfy or obliterate the act. That which the court performs judicially, or orders to be performed, is not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity." Sec. 38.

In speaking of the entries of judgments in the judgment books the same author says: "The authority of the clerk to make this formal entry is founded on a judgment already valid, and whose validity is not destroyed by his failure to enter it. * * * In many cases the record is not completed until after the adjournment of the term, and this practice seems to have prevailed at common law. As the judgment is final before its formal entry in this book, a statute providing that an appeal may be perfected within a specified time from the 'rendition' of the judgment, certainly commences to run from the time of the drawing up and signing of the judgment, and filing it among the papers in the case."

"The language used, in the opinion of the court, in the case of *Genella v. Relyea,* 32 Cal., 159, though not necessary to a decision of that case, is worthy of citation as founded upon reason. It indicates that the time for appeal begins to run, though no judgment be filed. 'The court announced its judgment, and the order for judgment

was entered in the minutes of the court on the 15th of August, 1865. The judgment was therefore rendered and the time for taking an appeal commenced to run on that· day.'" Sec. 40.

The practice of the judge, writing out, signing, and filing with the clerk, his decisions does not obtain in this state as in many others, but instead thereof, the law provides for a trial docket (Sec. 321 Civil Code) which in effect supersedes the necessity of the judgment roll, or other memoranda by the judge. The formality of drawing up, signing and filing of judgments and decrees by the trial judges, and incorporating them in the judgment rolls, has been wholly abandoned. The court announces its conclusions, renders its judgment, and makes a memorandum thereof in the trial docket, which serves as a guide to the clerk in the performance of the ministerial part of writing the judgment or decree in the journal.

The judgment or decree is *rendered* by the *court*. From "the date or rendition of the judgment or decree" the. time within which to appeal begins to run.

Nor can the provision of the section referred to, which requires that the transcript shall contain a copy of the judgment or decree, serve to extend the time by reason of a failure of the clerk to make the proper entries at the time of its rendition. The law requires him to enter the judgments and decrees upon the journal, and, as we have seen, provides that he may be required to do so by the court, or judge, without any proceedings being instituted by interested parties to compel action. The question as to what would be the effect in case of the absence of the clerk from the state, or his refusal to journalize the proceedings of the court, does not arise in this case, for it appears that ample time intervened between the entry of the decree upon the journal and the expiration of the six months within which the appeal might have been perfected. In such case the right to appeal cannot be destroyed by the default of

the court. *Dobson v. Dobson*, 7 Neb., 296. But in a case where a party has not been deprived of the right ·by the act of the court or its officers, and where sufficient time has elapsed in which to procure a transcript of the recorded entries, the court has no power to extend the time in which an appeal may be taken. *Nuckolls v. Irwin*, 2 Neb., 65. *Glore v. Hare*, 4 Id., 131.

In *Glore v. Hare*, it is said by Chief Justice LAKE, that "if the clerk below fails to make up the transcript in time, the appellant should appear here and suggest that fact. If he files transcript after the time prescribed he cannot complain of the negligence of the clerk."

It is apparent that the appeal was not taken "within six months after the date of the rendition of the decree," as is required by the statute, and the motion to dismiss will be sustained.

MOTION SUSTAINED.

COBB, J., concurs.

MAXWELL, CH. J., dissenting:

I am unable to give my assent to the opinion of the majority of the court for the following reasons; This action was brought by Miller against Horn in ejectment, to recover the possession of one hundred and sixty acres of land. It is a purely legal action, as he claims to be the owner through a sheriff's sale. Horn is in possession and claims the legal title derived from one Acheson, whose title Miller claims he obtained through the aforesaid sheriff's sale. It is thus a contest between legal titles, in which the entire controversy may be determined at law, and where Miller is entitled under the statute to submit his case to the determination of a jury and to have at least two trials in the case. The rule is well settled that a suit in equity will not be maintained to take the place of the action of

-ejectment and to try adverse claims and titles to land which
are wholly legal, and to award the relief of the recovery
of possession. *Wolfe v. Scarborough*, 2 O. S., 361–368.
*Woodruff v. Robb*, 19 Ohio, 212–214. *Welby v. Duke of
R.*, 6 Bro. P. C., 575. *Hill v. Proctor*, 10 Wa. Va., 59–
77. *Cavedo v. Billingo*, 16 Florida, 261. *Strubher v. Bel-
sey*, 79 Ill., 307. *Phelps v. Harris*, 51 Miss., 789–793.
*Lewis v. Cocks*, 23 Wall., 466–469. *Boston D. Co. v.
Florence Manuf. Co.*, 114 Mass., 69. *Whitehead v. Kit-
son*, 119 Mass., 484. *Griswold v. Fuller*, 33 Mich., 268.
*First Nat. Bank v. Bininger*, 26 N. J. Eq., 345. *Wolcott
v. Robbins*, 26 Conn., 236. *Green v. Spring*, 43 Ill., 280.
*Roberts v. Taliaerro*, 7 Iowa, 110–112. *Shotwell v. Lawson*,
30 Miss., 27. *Bobb v. Woodward*, 42 Mo., 482–488.
*Waddell v. Beach*, 1 Stockton Ch., 793–795. *Milton v.
Hogue*, 4 Ire. Eq., 415–422. *Pell v. Lander*, 8 B. Mon.,
554–558. *Dickerson v. Stoll*, 4 Halst. Ch., 294–298.
*Doggett v. Hart*, 5 Florida, 215. *Topp v. Williams*, 7
Humph., 569. *Hale v. Darter*, 5 Humph., 79. *Hipp v.
Balin*, 19 How., 271–277. *Bowers v. Smith*, 10 Paige,
193–200. 1 Pom. Eq., § 177.

This suit of *Horn v. Miller* being one in which it was
sought to enjoin Miller from proceeding at law, when,
whatever defense Horn may have to the action may be set
up in the ejectment case, the court was without jurisdic-
tion, and the judgment of the court below dismissing the
bill is no doubt right, and the case at law will proceed.
So that it is apparent that whatever the ruling upon this
motion may be, the final result would be the same—a dis-
missal of the bill.

I am unwilling, however, to give a construction to the
language regulating the right of appeal in equity cases,
which it seems to me is at variance with the liberal rules
heretofore adopted by this court, that in the language of
the first section of the code " its provisions and all proceed-
ings under it shall be liberally construed with a view to

promote its object and assist the parties in obtaining justice."

Sec. 675 of the code provides that " the party appealing shall, within six months after the rendition of the judgment or decree, or the making of the final order, procure from the clerk of the district court and file in the office of the clerk of the supreme court, a certified transcript of the proceedings had in the district court containing the pleadings, the *judgment or decree* rendered, or final order made thereon," etc. Now, it is said that the decree is rendered as soon as it is announced. This for certain purposes is no doubt true, but that it does not apply in cases of appeal is evident from the requirement of the statute that a copy of the decree is to be filed in the supreme court. As a rule the appellant is not the party whose duty it is to prepare the decree. It is for the party claiming the benefit of such decree to see that it is prepared and entered, and until it is so entered it is not, in my view, rendered within the meaning of the statute. It is proved beyond controversy that the appeal in this case was taken within six months from the actual entry of the decree, a copy of which is set out in the record. The time from which an appeal may be taken dates from the *actual* rendition of the decree, and not from the fiction of the law when it was supposed to have been rendered. The reasons given for the opposite holding fail to convince me that a party should be required to incur all the expenses of procuring a transcript of all the proceedings in a case in the district court, including the decree, and file the same in the supreme court before, in fact, any decree is found on the records of such court from which to appeal.

The motion, therefore, should be overruled.