CHARLES ROOT ET AL V. JOHN A. POTTER ET AL.

*Fraudulent conveyances—General creditors cannot attack—Assignment law —Assignee proper party to complain of frauds against the assignment— Is a trustee or representative of the creditors for all purposes auxiliary to the assignment—Prior dealings, in no way connected with the assignment in the intention of the parties, not avoided—Preferences—Statute of frauds.*

1. It has always been held in this State that general creditors, having no judgment or lien on the debtor's property, cannot attack conveyances or other dealings for fraud: *Maynard v. Hoskins*, 9 Mich. 485; *Tyler v. Peatt*, 30 Mich. 63; *Griswold v. Fuller*, 33 Mich. 268.

2. Under the assignment law of this State—How, Stat. chapter 303—the assignee, and not the creditors, should be the party complaining of frauds against the assignment, as section three confers upon him "the right to recover all property or right or equities in property, which might be reached or recovered by any of the creditors of the assignor."

3. The assignment law regards the assignee as a trustee or representative of the creditors, for all purposes auxiliary to the assignment, and if creditors could sue, also, it would create great confusion.

4. There is nothing in the assignment law which undertakes to avoid dealings previous to the assignment, whether near or remote in point of time, which were in no way connected with it in the intention of the parties. The statute only makes preferences void which are made by the assignment itself, and this, by the largest possible construction, cannot go beyond such acts as are done, in such a time and manner, as to be parts of the same transaction, and within the same disposition whereby the debtor's entire estate is applied to the payment of all his debts.

5. Preferences, to come within the language and mischief of the assignment law, must be made in separate form to avoid the effect which the statute would operate, of annulling them, if they were included in the assignment itself.

6. The assignment law shows no intent in the Legislature to change the existing statutes against frauds except in the one particular of preferences, and it would be a very dangerous and unfortunate rule, if it could be legally adopted, which would annul the dealings of honest persons with those whom they do not suspect of fraudulent or unlawful designs.

Appeal from Clinton. (Smith, J.) Argued January 21, 1886. Decided February 3, 1886.

Defendants appeal. Reversed.

The facts are stated in the opinion.

*John D. Conely* (*Conely, Maybury & Lucking*), for complainants.

How. Stat. § 8739, avoids all assignments, commonly called common-law assignments for the benefit of creditors, unless made without preferences; but in view of § 8744, being section 6 of the assignment act, it has been held that notwithstanding § 8739 makes preferential assignments void, the general intent of the act should be upheld, and it is the

duty of the court to rid the assignment of that, which if per-
mitted to stand, would avoid it, and thus sustain the purpose
of the act.

If a preference appeared upon the face of the assignment,
the power of the court to make a decree declaring it void,
and thus validating the assignment, is conceded.

Complainant's counsel contended in an elaborate argument,
that where the attempted preference is evidenced by a sep-
arate instrument from the assignment, but a part of a single
scheme of the debtor to avoid the provision of the assign-
ment law against preferences, even though executed prior to
such assignment and without actual knowledge on the part
of the preferred creditor of such intent, the same is void and
should be set aside by the court as fraudulent in law, and the
debtor's estate distributed, pro rata, among his creditors.
That the statute does not qualify the effect of the forbidden
preference, by the knowledge or want of knowledge on the
part of the favored creditor of the same, but declares *all
preferences* void, whether made with the creditor's knowl-
edge or participation or not: *Fuller v. Hasbrouck*, 46
Mich. 78; *Coots v. Radford*, 47 Mich. 37; *Pickersgill v.
Riker*, 50 Mich. 98; *Heineman v. Hart*, 55 Mich. 64;
*Cron v. Estate of Cron*, 56 Mich. 8; *Rollins v. Van Baalen*,
56 Mich. 610; *Kellogg v. Root*, 23 Fed. Rep. 525.

In answer to defendant's contention, that as complainants
are not judgment creditors and have never had any specific
lien upon any of the assigned property, they cannot file this
bill, we answer that the cases cited by them are where the
creditors sought to set aside fraudulent conveyances, as to
them, but for want of a levy, or jurisdiction to render the
judgment on which the levy was based, were unable to show
an interest in the conveyed property. In this case, there is a
distinct trust created in which complainants are beneficiaries;
and the fact that they are also creditors does not prevent a
resort to equity. The rule is well established that whenever
a creditor has a trust, in his favor, he may go into equity
without exhausting legal processes or remedies: *Case v.
Beauregard*, 101 U. S. 688, 691; *Fox v. Willis*, 1 Mich.
321, and cases cited in opinion on page 323.

The act vests in the assignee all property and all rights,
legal and equitable, of the debtor, as also all property or
right or equities in property which might be reached or
recovered by any creditor. How. Stat. §§ 8739, 8741. The
bill, in this case, is filed in behalf of all creditors to obtain a
decree, that, in the distribution of the assets, certain prefer-

ences attempted to be made by the debtor shall be disregarded and all creditors participate, share and share alike, therein, and it was filed after the assignee, against the consent of the creditors, had recognized the validity of the preferences, and begun to pay the preferred debts.

But to leave no doubt on the subject, and to confine the jurisdiction to the particular court having jurisdiction of the assignment itself of all questions connected with its management, the act provides that whenever there was fraud in the matter of the assignment, *any person interested* might file a bill for the enforcement of the trust and a receiver might be appointed, etc.

The removal of the assignee is not obligatory or that he be the complainant is not essential: How. Stat. § 8744. It is probably true that the intervening creditor should file proof of his claim under section 8742 and the complainants have done so, and this makes them interested in the assignment. This bill is subordinate, auxiliary and incidental to the assignment proceedings and under the control of the court in which the assignment is filed: *Scott v. Wayne County Circuit Judge,* 58 Mich. 311; *First National Bank v. Barnum Wire Works,* Ib. 315.

The real question, is, did the debtor intend to dispose of all his property for the benefit of his creditors, and did he consummate that intention by mortgaging part and assigning the balance? If so, then the two instruments are parts of one scheme, although the debtor may not at the time of giving the security, have fully determined that the disposition of his property would be by a technical assignment: *Van Patten v. Burr,* 52 Iowa, 518. The true test is, did they constitute one transaction: *Burrows v. Lehndorff,* 8 Iowa, 96, 103; and if so the security is void. If not, the bill must be dismissed. Nearness or remoteness of time are elements to be considered, but never conclusive: *Holt v. Bancroft,* 30 Ala. 193; Burrell on Assignments, 4th ed. § 128.

*R. W. Butterfield,* for defendants.

Complainants have shown no right in themselves to maintain their bill. There is no averment of any lien upon the property, entitling them to bring any such bill, apart from the effect of the assignment statute: *Stoddard v. McLane,* 56 Mich. 11.

It is not a bill to enforce the trust created by the assignment, filed under section 6 of the statute. Its single purpose is to set aside preferences and reach certain specific property.

No request to the assignee to act, or refusal on his part, or application for his removal, is shown. As to exclusive right of assignee to bring such a suit, cites, *Coats v. Radford,* 47 Mich. 37; *Pickersgill v. Riker,* 50 Mich. 98; *Commercial National Bank of Detroit v. Mosser,* 57 Mich. 386; *Gott v. Hoschna,* 57 Mich. 413; *Richardson v. Day,* 23 Fed. Rep. 227.

The right of the assignee has been held exclusive under the national bankruptcy laws: *Glenny v. Langdon,* 98 U. S. 20; *Trimble v. Woodhead,* 102 U. S. 647; *Moyer v. Dewey,* 103 U. S. 301; *Livermore v. Jenckes,* 21 How. 126. So in Massachusetts Supreme Court: *Snow v. Lang,* 2 Allen 18; *Butler v. Hildreth,* 5 Metc. 49; *Freeland v. Freeland,* 102 Mass. 477.

The intent, at time of execution and manual delivery of the mortgages, must control: *Mitchell v. Black,* 6 Gray 100; *Sawyer v. Turpin,* 91 U. S. 114; *In re Wynne,* 4 N. B. R. 23; *Seaver v. Spink,* 8 N. B. R. 218; *Briggs v. Parkman,* 2 Metc. 258.

If then valid, no subsequent act of the mortgagors could invalidate them, to make them void as parts of the assignment. The securities must have been executed in pursuance of a design contemplated and determined on in the beginning, which must have included the making of an assignment: Bump. on Fraudulent Conveyances, page 365; and this intent to make the assignment and to do the illegal act must be known to the party taking the preference: *Heineman v. Hart,* 55 Mich. 65; *Fairbanks v. Haynes,* 23 Pick. 324. The general rule, is, that as long as the party maintains control of property he may use it to pay one honest debt instead of another, and that the preference, to come within the effect of the statute, must be in the general assignment itself: *Lampson v. Arnold,* 19 Ia. 479; *Lyon v. McIlvaine,* 24 Ia. 9; *Dodd, Brown & Co. v. Hills & Kramer,* 21 Kans. 709; *Garretson v. Brown,* 26 N. J. [Law] 439.

*John E. More,* for defendants.

The general rule is well established, in this State, that none but a judgment creditor can assail a conveyance alleged to be fraudulent: *McKibben v. Barton,* 1 Mich. 213; *Fox v. Willis,* Ib. 321; *Millar v. Babcock,* 29 Mich. 526; *Tyler v. Peatt,* 30 Mich. 63; *Stoddard v. McLane,* 56 Mich. 11.

There is no provision in our assignment law, enabling a creditor to file a bill to set aside a conveyance made by the assignor. As to what a creditor may do, see How. Stat. §

8744, and I insist that it is within the intention and letter of the law, that the assignee shall have the *exclusive* right to bring all suits for the benefit of the creditors, to recover the assignor's property and to avoid any fraudulent conveyances he may have made : *Coots v. Radford*, 47 Mich. 37 ; *Heineman v. Hart*, 55 Mich. 65 ; *Hallowell v. Bayliss*, 10 Ohio St. 536 ; *Reubens v. Joel*, 13 N. Y. 488 ; *Spring v. Short*, 90 N. Y. 538. The same doctrine is held in the federal courts : *New Orleans National Bank v. LeBreton*, 14 Fed. Rep. 646 ; *Olney v. Tanner*, 18 Ib. 636 ; *In re Lowe Bankrupt*, 19 Ib. 589 ; *Southard v. Benner*, 72 N. Y. 424.

CAMPBELL, C. J. This proceeding in equity was brought by several creditors of the firm of Potter, Beattie & Co., composed of John A. Potter, Adam Beattie, and Evan M. Potter, formerly doing several kinds of business, chiefly in Ovid, but also in Hasty and Ashley station, in Gratiot county. On the seventeenth of July, 1884, this firm made a general assignment, in favor of creditors, to Charles M. Hagadorn. This bill is filed, in furtherance of the assignment, to subject to its operation a considerable amount of assets, in personalty, realty, and claims discharged, of certain securities executed to John Sowers and Edgar C. White, and to James C. Darragh as their general assignee, which are claimed to have been given to secure unlawful preference in fraud of the assignment law.

The circuit court for the county of Clinton, granted a decree, adjudging them void as against the assignment, and Sowers, White, and Darragh, who are the only parties injuriously affected by the decree, appeal. The members of Potter, Beattie & Co., and their assignee, Mr. Hagadorn, who are the remaining defendants, do not appeal.

A preliminary objection to the right of complainants to file this bill, in their own names was urged on the argument. It is claimed that complainants, not suing as judgment creditors who have either levied on the property in question or exhausted their remedy at law, cannot attack the conveyances or securities executed by the debtors to third persons ; and that, under the assignment law, the assignee, and not the creditors, should be the party complaining of frauds against

the assignment, especially as the bill is not filed to remove him or disturb the assignment itself.

This objection is properly taken, as, under the assignment law, by section 3, it is declared.that " every such assignment shall confer upon the assignee the right to recover all property or right or equities in property, which might be reached or recovered by any of the creditors of such assignor." It has always been held in this State that general creditors, having no judgment or lien on the debtor's property, cannot attack conveyances or other dealings for fraud: *Tyler v. Peatt*, 30 Mich. 63 ; *Maynard v. Hoskins*, 9 Mich. 485 ; *Griswold v. Fuller*,33 Mich. 268.

The assignment law regards the assignee as a trustee or representative of the creditors for all purposes auxiliary to the assignment, and if creditors could sue also, it would create great confusion. In the present case we have the assignee and all parties in interest before us, and there has been a full inquiry by testimony into the facts. We have deemed it better, under the circumstances, inasmuch as everybody is impleaded who could be brought in had the suit been by the assignee, and all parties will be bound, to overlook the irregularity, and decide the case upon all the rights appearing. We do not, however, regard the practice as one which should be approved, and, had the record been less complete as to parties and testimony, we do not think the objection could have been disregarded.

The testimony shows that, within a few days before the assignment, the assigning firm or its members made several securities and transfers to third persons which are not attacked in the bill, and which appear to have been fair and proper arrangements. The only securities assailed are several made for different sums to Sowers & White, making in the aggregate, as appears from the facts, security for not far from $30,000 of indebtedness. Upon the testimony this indebtedness is fully made out, and in our opinion it is an honest claim. The only question is whether the circumstances, and time of the execution of the securities, made them unlawful preferences. It is not very seriously urged,

and we think it could not be, that the debts were fictitious, or that there was any other fraud in the transactions.

The securities attacked were these: Four chattel mortgages dated July 12, 1884, actually handed over to the mortgagees, July 15th, and filed July 16th, late in the evening; an assignment to Sowers & White of accounts and claims belonging to the firm, containing an inventory of not quite $5,000, and a general clause covering any claims not enumerated; a real estate mortgage made July 16, 1884, for $3,000, to defendant Darragh, the general assignee of Sowers & White.

The facts out of which these securities arose are substantially these; Potter, Beattie & Co. were, as before stated, engaged in several branches of business, and doing a considerable annual business. It was supposed by themselves, and the facts indicate, that they had accumulated property which, if they had been thorough business men in their methods, would have been much beyond their liabilities. But it is manifest that they applied to extensive and scattered transactions the book-keeping and other methods which would not have been appropriate to any but a small local business. Sowers & White were neighbors, and local bankers, who carried their paper, and gave them discounts and banking facilities for a long time, and did not require of them the usual bank rules of indorsers or collaterals, having confidence in their solvency, and having an understanding that if at any time they needed security they should have it.

In the summer of 1884 money matters became somewhat stringent, and all the parties were more or less cramped in realizing their assets. Under these circumstances, Sowers & White desired security, and it was given them in the manner specified. Nevertheless, on the 16th of July, 1884, they found themselves compelled to suspend, and assigned to Darragh, to whom the real-estate mortgage was given immediately after, under what is claimed to have been, and what we are satisfied was, the belief that Potter, Beattie & Co. were honorably bound to give it under the old understanding. On the night of July 17th, Potter, Beattie & Co. them-

selves assigned, and complainants rely on the rights of the creditors to have recourse to the entire assets thus incumbered during the brief space of time previous.

Treating this suit as properly brought, and as if the assignee himself had brought it, the question arises whether those securities are void as against the assignment.

There are two theories on which they are attacked. One is that they come within the statutes which avoid all arrangements made to "hinder, delay or defraud" creditors. The other is that they are illegal preferences under the statute which provides "that all assignments, commonly called 'common-law assignments for the benefit of creditors' shall be void, unless the same shall be without preferences as between such creditors, and shall be of all the property of the assignor not exempt from execution:" How. St. § 8739.

The familiar statutes against frauds which existed before the present assignment law, and which have not been affected by it except as above quoted, have been too often discussed to need dwelling on now. Under those provisions of law, fraud was made a question of fact, and any creditor who obtained in good faith a security for an honest debt could hold it against any subsequent claim to attack it. In the present case there can be, on the testimony, no reason to doubt that all of these securities were given to secure valid and honest debts, and without any fraud in fact on either side. They cannot be held bad under the statutes to prevent frauds.

The question then arises whether the transactions were illegal as amounting to unauthorized preferences under the assignment law. And it is a question which is supposed to be an entirely new one in this State. It is, however, upon such facts as appear to exist in the record before us, within well-settled and familiar principles.

There is nothing in the assignment law which undertakes to avoid dealings previous to the assignment, whether near or remote in point of time, which were in no way connected with it in the intention of the parties. Retroactive operation which would divest lawfully vested rights is not in har-

mony with our laws. The statute only makes preferences void which are made by the assignment itself, and this, by the largest possible construction, cannot go beyond such acts as are done in such a time and manner as to be parts of the same transaction, and within the same disposition, whereby the debtor's entire estate is applied to the payment of all his debts. In other words, the preferences, to come within the language and the mischief of the statute, must be made in separate form to avoid the effect, which the statute would operate, of annulling them if they were included in the assignment itself. The assignment law shows no intent in the Legislature to change the existing statutes against frauds except in the one particular of preferences; and it would be a very dangerous and unfortunate rule, if it could be legally adopted, which would annul the dealings of honest persons with those whom they do not suspect of fraudulent or unlawful designs.

As counsel for defendants conceded, for the purposes of this case, that if both Potter, Beattie & Co. and their mortgagees had these securities executed and delivered with an understanding on both sides that a general assignment was to be made, they would be open to attack under the statute, we need not decide how far that concession, as made, should be adopted. We shall consider how far the facts show such an understanding.

There is some reason to suppose that Sowers & White were apprehensive that they themselves might be compelled to suspend unless relieved in some way. But we do not think, although it is not very material here, that they had any immediate purpose of assigning until they actually concluded to do so on the day when their assignment was executed; and we are not led to believe, from anything in the case, that either they or their assignee, Mr. Darragh, had any idea that Potter, Beattie & Co. would be driven to any assignment by any exigency then existing, if at all; and, without some such supposition, there was nothing to hinder them from any dealings to obtain either payment or security for their claims, even if Potter, Beattie & Co. had that purpose.

We do not think it is apparent that Potter, Beattie & Co. had any purpose of assigning until they had a conference on the evening of July 17th, which ended in their making one. Such is their positive testimony under oath, and we see no reason to believe them untruthful.

We are bound to look at the facts and the men as they are. It is natural enough that a series of transactions so close together, and so important in their consequences to general creditors, have led to strong suspicions. If these assignors had been close business men, keeping their books and affairs in such condition as the best business men find it necessary, these dealings would have been peculiar and questionable. But the confidence of the bankers in their customers, which led them to ask no current security, was undoubtedly honest, although quite as unusual as anything else that appears. We are satisfied that Potter, Beattie & Co. supposed themselves to be able to pay all their debts, if not pressed, and that they hoped to tide over their difficulties, until their final consultation. Better business men would have appreciated the situation better, but might quite as probably never have fallen into it. We have no right to impute fraud to what was not wrongly designed; and if there was no actual purpose of making a general assignment, it cannot be imputed.

In our opinion, the securities sought to be set aside were not designed by any of the parties as an evasion of the assignment law, or intended to take the property away from the operation of a general assignment, and to create preferences in fraud of it.

The decree must be reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.