GEORGE D. SWEETZER ET AL. V. CHARLES W. HIGBY ET AL.

—

*Assignment for benefit of creditors—Enforcement of trust—Powers and duties of assignee—Preferences.*

1. March 17, 1883, an *insolvent* firm, in order to secure the *bona fide* claims of *four* creditors, executed *three* promissory notes, secured by a chattel mortgage on the firm assets, to a *third* party, and *three* days *later* made a general assignment of all of the firm property for the benefit of creditors to one of the secured creditors under said mortgage, who took possession and entered upon his duties as assignee. *None* of the *secured* creditors were aware of the intent of the firm to make such assignment when the notes and mortgage were executed.

May 3, 1883, complainants, *unsecured* creditors of said firm, filed a bill on behalf of themselves and other creditors, without leave of the court, to set aside said chattel mortgage as a fraudulent preference under How. Stat. chap. 303, regulating voluntary assignments for the benefit of creditors, and praying for an *equal* distribution of the firm property, and for general relief. By a mutual arrangement the assigned property was converted into money, which was held by the assignee for distribution pending said litigation. Complainants' bill was dismissed.

*Held,* that complainants should have requested the assignee to file said bill, and, upon his refusal or neglect to do so, should have moved the chancery court for an order *compelling* such action on *his* part, or for leave to file it themselves; and that in no *other* way could they move in the matter.

2. The execution of a *fraudulent* mortgage by an *insolvent* debtor in anticipation of a *general* assignment for the benefit of his creditors amounts to a withholding of a portion of the debtor's property from the execution of the trust under such assignment, and the remedy for such misconduct or fraud is found in How. Stat. § 8741, which provides that " such assignment shall confer upon the assignee the *right* to recover *all* property, or right or equities in property, which might be reached or recovered by *any* of the creditors of the assignor."

3. How. Stat. § 8744, which provides that in case of *fraud* in the *matter* of the assignment, or in the *execution* of the *trust* thereunder, or if the assignee shall fail to comply with any of the provisions of the assignment act, or fail or neglect to promptly and

faithfully execute his trust, *any* person interested may file a bill for its *enforcement*, was intended to give to creditors *ample* relief against the *incompetency, neglect*, or *fraud* of the assignee, and not to cover cases where he *could* and *would* act. He is supposed to be the trustee of *all* the creditors, and, so long as his *competency* or *integrity* is not attacked, should, under the advice and control of the court, *control* and *manage* the assigned property, and the litigation necessary to secure *full* possession of such property and subject it to the uses and purposes of the trust.

4. Under How. Stat. § 8746, providing for the contest by an assignee (or receiver) of an insolvent debtor of claims filed by creditors, a creditor desiring such contest must apply to the assignee or receiver in *writing* to make the same, and, upon his *failure* so to do, can obtain an order from the court *compelling* such contest; but the creditor cannot move in the matter in any *other* way.

5. Where, in anticipation of an assignment, an insolvent firm secured certain creditors by chattel mortgage on the firm property, who accepted the mortgage *in* payment, or as security *for* the payment, of *just* and *valid* debts, without knowledge of such intended assignment,—

*Held*, that such mortgage was not fraudulent as a preference in their favor.

6. It has always been held in this State that a creditor has a right to obtain payment of, or security in full for, his claim against a *failing* debtor, even though aware of such insolvency and that the effect will be to *hinder* and *delay*, or even *defeat*, other creditors in the collection of their just claims; and the assignment law was not intended to change the law in that behalf.[1]

7. The burden of proof is on the party attacking a security as a fraudulent preference under the assignment law to *establish* such claim.

8. Where, on the death of *one* of *three* copartners, an arrangement was made with the widow by the survivors to pay her an agreed sum for her husband's interest, and she neither shared in the profits or losses, nor in the business thereafter carried on by the survivors in the old firm name, but received interest on said sum, it being treated as a loan to the firm,—

*Held*, that, under a general assignment by the survivors in the firm name for the benefit of creditors, the interest of the deceased partner could not be treated as a part of the firm assets and liable to the partnership debts, having been drawn out by the widow.

---

[1] See *Root v. Potter*, 59 Mich. 499 (head-notes 4, 5, 6).

Appeal from Jackson. (Gridley, J.) Argued July 13, 1886. Decided October 7, 1886.

Bill by creditors of assignor under assignment law to set aside a mortgage. Bill dismissed. Decree affirmed. The facts are stated in the opinion.

*Thomas A. Wilson (John D. Conely,* of counsel), for complainants.

*Gibson & Parkinson,* for defendants Higby, Thompson, Haight, and Ella Camp.

*A. & C. A. Blair,* for defendant Theodore J. Camp.

*Erastus Peck,* for defendant Heywood.

*Hammond & Barkworth (Griffin & Warner,* of counsel), for defendant Marshall J. Morrill.

[The law seems to be so *thoroughly* settled by the Court, so far as the questions decided are concerned, that a summary of the briefs of counsel is omitted.—REPORTER.]

MORSE, J. The complainants are copartners, doing business in the city of New York under the name and style of Sweetzer, Pembrook & Co.

They filed a bill of complaint in this cause, May 3, 1883, in behalf of themselves and other creditors of the firm of Camp, Morrill & Camp, to set aside a chattel mortgage executed by the defendants Theodore J. Camp and Marshall J. Morrill, and the firm of Camp, Morrill & Camp, to the defendant Charles W. Higby, as a fraudulent preference under How. Stat. chap. 303, regulating voluntary assignments for the benefit of creditors, and praying for an equal distribution of the assets of the insolvents among all their creditors, and for general relief.

The undisputed facts shown by the proofs are as follows:

For some years previous to the filing of this bill the firm of Camp, Morrill & Camp were engaged in the business of selling dry goods and carpets at the city of Jackson. The firm was originally composed of Theodore J. Camp,

Marshall J. Morrill, and Henry W. Camp. Henry W. Camp died in 1876, but thereafter there was no change in the firm name. After his death his interest in the firm was agreed upon at $7,000, which his wife, the defendant Ella Camp, loaned to the firm, they paying her interest upon the same after January 1, 1877.

March 17, 1883, the defendants Theodore J. Camp and Marshall J. Morrill made three promissory notes, in the name of the firm of Camp, Morrill & Camp, to defendant Charles W. Higby, payable to his order one day after date, to secure the following claims against said firm: $16,772.39 to Wm. D. Thompson; $1,231 to Sidney S. Heywood; $1,563.28 to Mrs. H. K. Haight; and $7,000 to Ella Camp. The amounts owing to Heywood and Mrs. Haight were put in one note. These notes Higby indorsed, and waived demand and notice of non-payment upon the back of each.

Wm. D. Thompson had been the banker of the firm, and his claim against them was represented by various promissory notes, none of which were due at the time of making the notes to Higby. They represented money loaned at various times to the firm to pay collections and other demands against them. The amount and genuineness of the debt to Thompson is conceded.

Heywood is a brother-in-law of Theodore J. Camp, and his debt is not disputed. Mrs. H. K. Haight is an aunt of Theodore J. Camp, and he has been her agent in money matters at Jackson. Ella Camp is a sister of Higby, who testifies that he entered into the transaction for the purpose of securing her claim against the firm. Mrs. Haight and Mrs. Camp were not present, and had no knowledge of the transaction, at the time the notes and mortgage were executed.

On the same day the notes to Higby were made, a chattel mortgage, covering all the goods and property of the firm of Camp, Morrill & Camp in their store, and all property,

goods, and merchandise which might thereafter be added to the stock, was executed and signed by Theodore J. Camp and Marshall J. Morrill, the firm name also being added, and delivered to Higby, for the sum of $26,566.67, as collateral security for the payment of said notes.

On March 20, 1883, Camp and Morrill executed a general assignment of all their property for the benefit of their creditors, under the statute, to Sidney S. Heywood, who accepted the trust, gave the requisite bond, took possession of the property, and entered upon his duties as assignee.

March 17, 1883, the firm also executed and delivered a mortgage of $3,000 to Mary J. Morrill, wife of Marshall J. Morrill, to secure her for an indebtedness of the firm to her, which mortgage was intended to be and has been treated as contemporaneous with the one to Higby. This mortgage is not involved here, but is the subject of another suit.

The evidence satisfactorily shows that all the debts secured by the Higby mortgage and notes were *bona fide*, and that none of the parties thus secured were aware of the intent of Camp and Morrill to make an assignment.

It is claimed that the interest of Henry W. Camp, the husband of the defendant Ella Camp, had never been drawn out of the firm of Camp, Morrill & Camp, and at the time the mortgage was given was a part of the assets of the firm and liable to the partnership debts.

We do not think so. It appears positively from the evidence of Theodore J. Camp and others, with nothing to dispute it, that an arrangement was made by which she was to be paid $7,000 for such interest, and that thereafter she neither shared in the profits and losses nor in the business of the firm, but received interest upon said sum, and it was treated as a loan to the firm.

Nor do we find, as claimed by counsel for complainants, that the debts to Mrs. Haight and Heywood were the

personal obligations of Theodore J. Camp. On the contrary it plainly appears that they were firm debts.

It is insisted by the counsel for defendants that under the decisions of this Court in *Root v. Potter*, 59 Mich. 498, and later cases,[1] the complainants have no right to maintain a bill of this kind; that, under the assignment law, the assignee, and not the creditors, should be the party complaining of frauds against the assignment.

As in *Root v. Potter*, the bill in this case is not filed to remove the assignee or disturb the assignment, and no receiver is asked for to execute the trust because of any failure or fraud of the assignee.

The assignee, however, in this case, is one of the parties to be benefited by the adjudication that the mortgage in question is a valid one. It is insisted by the counsel for complainants that this fact so distinguishes the present case from *Root v. Potter* that the complainants were justified in filing their bill, as it could not legitimately be expected that the assignee would diligently or faithfully oppose his own interest in an investigation into the good faith or legality of the transaction out of which came this mortgage.

It is also most strenuously argued that the decision in the case of *Root v. Potter* is not sound, and rests upon a misapprehension of the statute governing assignments.

We are referred to the sixth section (How. Stat. § 8744) of the assignment act, which reads as follows:

"In case there shall be any fraud in the matter of said assignment, or in the execution of said trust, or if the assignee shall fail to comply with any of the provisions of this act, or fail or neglect to promptly and faithfully execute said trust, any person interested therein may file his bill in the circuit court in chancery of the proper county for the enforcement of said trust."

---

[1] See *Barnum Wire Works v. Speed*, 59 Mich. 278-9; *Angell v. Pickard*, 61 Id. 564 (head-note 8).

And it is claimed that the words "any fraud in the matter of said assignment" are broad enough, and were intended, to include a preference by way of mortgage, as in this case, though executed before the assignment, if such execution was in contemplation of a future assignment.

We see no reason to change the ruling in *Root v. Potter*, since confirmed in the case of *Angell v. Pickard*, 61 Mich. 564. See, also, *Scott v. Chambers*, 62 Mich. 532.

If, by a fraudulent mortgage or payment, or the secretion of property, the whole assets of the assignor are not assigned and delivered by him to the assignee, the assignee is most certainly the proper person to take action to bring such assets within and under his control for the purposes of his trust. If there has been an unlawful preference, as claimed in this case, it amounts to nothing more nor less than the withholding of a portion of the debtor's property from the execution of the trust under the assignment.

The remedy for such misconduct or fraud upon the part of the debtor is plainly and clearly provided for in the third section of the act. How. Stat. § 8741.

The fraud referred to in the sixth section of the act obviously is one in the "matter of the assignment" with which the assignee is connected as well as the assignor. If a fraudulent preference was contained in the body of the assignment itself, and such assignment was accepted by the assignee, and he undertook to execute it as made, he would thereby become a party to the fraud of the assignor, and the creditor would be justified in interfering, as in case of his failure to act or to faithfully perform his trust.

The sixth section was manifestly intended to give the creditors ample relief against the incompetency, neglect, or fraud of the assignee, and not to cover those cases where the assignee could and would act. The policy of allowing any creditor, or perhaps a dozen or more of them, to file bills, at great cost and expense to the insolvent estate, to

redress real or fancied frauds, not discernible in the assignment itself, and with which the assignee is in no way connected, is not desirable, and is not favored by the letter or spirit of the statute. The assignee is supposed to be the trustee of all the creditors, and, so long as his competency or integrity is not attacked, it is much better in all respects that he, acting under the advice and control of the court, control and manage the property of the insolvent, and the litigation, if any is necessary, to obtain full possession of all the debtor's property and to subject it to the uses and purposes of his trust.

The intention of the statute that the assignee or receiver, as the case may be, shall institute and control such proceedings, is further shown by the addition to the statute in 1881 as to matters of contest. It is provided that the assignee or receiver may contest any claim filed. If a creditor is desirous of contesting any claim, he cannot do it of his own motion. He must in writing request the assignee or receiver to do so, and upon failure of the assignee to comply with such request, he can, by a proper showing to the court, obtain an order compelling the assignee to institute such contest. How. Stat. § 8746. But the creditor cannot move except through the assignee or receiver.

In the case before us, the assignee was requested to contest the claims of these parties secured by these notes and mortgages, they having filed proofs of their claims in the clerk's office under the statute. This, however, was upon the law side of the court, and the record is silent as to the action of the assignee upon such request. There is, however, no doubt of the validity of the debts. The only question to be determined under the assignment is, shall they be paid in full, or share *pro rata* with the other creditors, as, under a mutual arrangement, the property has been converted into money, and is in the hands of the

assignee for distribution, awaiting only the result of this litigation.

In my opinion, the creditors, complainants in this cause, should have requested the assignee to file the bill for the setting aside of the mortgage in this case, and upon his refusal or neglect to do so should have moved the court for an order compelling him to do so, or for leave to file such bill themselves, and that in no other way could they move in the matter.

Whether the undisputed interest of the assignee in the mortgage, and the transaction leading to its execution, was sufficient to dispense with a request to him to move, need not be considered, as, in my opinion, the facts dispose of the controversy, and against the complainants, upon the merits. Yet I, for one, cannot uphold the filing of this bill without leave of the court below, inasmuch as it is not directed against any fraud in the matter of the assignment, or in the execution of the trust, or because of any fraud, failure, or neglect upon the part of the assignee, who is made a party defendant only because he is a beneficiary under the mortgage.

I do not believe that the assignment act, rightly construed, authorizes a creditor to move in equity, except to save the execution of the trust, or prevent fraud upon the part of the assignee. In a case like the present, if the assignee refuses to move, or his interest be such that the court is satisfied that he ought not to direct or control the proceeding, the court below, upon proper petition, should grant leave to the creditor to file his bill.

I am satisfied, upon a careful consideration of the testimony, that none of the parties named in said mortgage had any knowledge, at the time of the execution and delivery of the same, of the insolvency of the firm of Camp, Morrill & Camp, or that such firm contemplated an assignment. When Camp went to Thompson on Saturday

morning, March 17, and proposed to secure him by a chattel mortgage, Thompson refused to take it, and said he did not wish to be bothered with it, and told Camp that he needed but a little more assistance to take the firm through all right, and indicated a willingness to·afford such assistance. If Thompson had suspected the insolvency of the firm he would not have declined the security.

The question then arises,—granted that Camp and Morrill, at the time these notes and this mortgage to Higby were executed, contemplated an assignment in the near future, —what effect would the intention to make a general assignment have upon the securities, made and delivered before such assignment, to good-faith creditors, taking the same in payment, or as security for the payment, of just and valid debts, without knowledge of such.intention?

It has always been held in this State that a creditor has a right to obtain payment or security in full for his claim against a failing debtor, even though the creditor may know that the debtor is insolvent. He may also be aware of the fact that the effect of the payment or security to him will hinder and delay, or even defeat, other creditors in the collection of their just claims, and yet such knowledge will not avoid or impair his security taken for an honest preceding indebtedness. *Olmstead v. Mattison*, 45 Mich. 617; *Beurmann v.·Van Buren*, 44 Id. 496; *Loomis v. Smith*, 37 Id. 595; *Jordan v. White*, 38 Id. 253; *State Bank of·Bay City v. Chapelle*, 40 Id. 447.

It is not to be considered, in my opinion, that the assignment act was intended to prevent a diligent creditor from securing his pay in full, or obtaining security for his debt from a failing debtor, or to disturb the uniform holdings of this Court in that respect.

"Are all the creditors who have been honestly paid or arranged with to be prosecuted, and the amounts they received to be recovered back, although they had known

nothing of the debtor's insolvency, or of his ultimate designs, and dealt with him honestly and fairly?"

"Did the statute intend that the debtor should have the power at any time afterwards to annul and make them all constructively fraudulent and void by the single act of carrying into effect a purpose contemplated before, but concealed from them, of making an assignment?" *Garretson v. Brown,* 26 N. J. L. 439.

I think not. Whatever the rule may be as to one having knowledge both of the insolvency and intended assignment, which it is not necessary to determine here, certainly one innocent of any intended wrong on the part of the debtor has a legal right to secure his claim by pressing, or to accept without the asking, payment or security of a just debt. *Heineman v. Hart,* 55 Mich. 76; *Root v. Potter,* 59 Id. 498; *Garretson v. Brown,* 26 N. J. L. 425; *Nelson v. Gary,* 15 Neb. 531.

But it is claimed that Mrs. Haight being absent, and her interest in the matter being attended to by Theodore J. Camp as her agent, she is chargeable with the knowledge of Camp. In other words, if Camp, at the time the notes and mortgage were executed, intended to make an assignment, and contemplated by such notes and mortgage to make an unlawful preference to the creditors benefited thereby, Mrs. Haight must be presumed to know of this, and to be responsible for the knowledge of her agent in the transaction.

I am not satisfied from the proofs, however, that Camp intended to make any assignment at the time these papers were executed. He swears positively that he did not so intend, and all the testimony, saving that of the defendant Morrill, tends to strongly corroborate his statement. No word was uttered or move made looking towards an assignment until Monday, the nineteenth, the day before it was actually executed.

Upon completing his inventory, Camp, who really

managed the whole business, saw that he could not go to New York, as he intended, and make a true statement to his creditors there, upon which he could buy largely. He felt like securing his home creditors, and then strive to pull through if possible. The possibility, no doubt, may have entered his mind that he might be forced to suspend business in the end, and yield all his property up in some manner to his creditors. He probably canvassed such a contingency in his mind, as any business man would under like circumstances; but the hope and purpose of continuing in business was not eradicated until Monday afternoon, when other creditors began to press him.

To say that because he entertained the remote possibility of an assignment, or a general attachment of his property by anxious creditors, as the result of the execution of the chattel mortgage, such chattel mortgage must be considered as an unlawful preference to one who also shared the same thought, is to establish a rule that will prevent in the future any business man from executing a chattel mortgage to his creditor, as the known possibilities in business would lead any man, acquainted and familiar with the ordinary course of business dealing, into the same difficulty. It is a well-known fact that the placing of a chattel mortgage upon a dealer's stock is liable to bring at once about him his other creditors, who, if not satisfied, may compel him, in self-defense, to make an assignment.

It is true that Morrill swears that Camp talked to him of an assignment on Saturday morning, before the making of the notes, but Otis Henderson, the book-keeper of the firm, who heard the conversation between Camp and Morrill, denies that there was any such talk, and corroborates the testimony of Camp and others that there was no talk of an assignment until Monday.

We are inclined to take the testimony of Camp and

Henderson in preference to that of Morrill. At least, the burden of proof is upon the complainants to show a dishonest or unlawful preference, which, in my estimation, they have failed to do.

In this opinion we are fortified by the conclusion of the learned judge below, who saw the witnesses before him, and heard their testimony in open court, and had acquaintance with and knowledge of the parties so testifying.

The decree of the court below, dismissing complainants' bill, is affirmed, with costs.

The other Justices concurred.