ALFRED A. DWIGHT ET AL. v. THE SCRANTON & WATSON LUMBER COMPANY ET AL. [MARY W. WHIPPLE v. ABRAM L. STEBBINS, RECEIVER, ETC.]

*Assignment for benefit of creditors—Preferences—Receiver—Good-faith incumbrancer.*

1. The statute *forbids*, because it *prohibits*, any debtor who makes a common-law assignment from preferring one creditor over another, its *main* object being to prevent such preferences, and to insure an equal division of the debtor's property among *all* of his creditors.

2. The assignee, under the power given to recover all property, or right or equities in property, which might be reached or recovered by the assignor's creditors, is not authorized to recover a payment made by way of preference to a *bona fide* creditor before the assignment, nor to attack the validity of a mortgage given to secure the payment of *such* a debt.[1]

3. Preferences are void only in common-law assignments because forbidden by statute.

4. The intent of a mortgagor to evade the provisions of the assignment law prohibiting preferences, by executing a mortgage to

---

[1] See *Brown v. Brabb, ante,* 17, for a discussion of the relative rights of an assignee and secured creditors.

secure a *bona fide* debt in anticipation of and cotemporaneous with the assignment, cannot affect the validity of the security where the mortgagee is innocent of any such intent, and does not knowingly participate therein. *Heineman v. Hart*, 55 Mich. 76; *Root v. Potter*, 59 Id. 498; *Sweetzer v. Higby*, 63 Id. 13; *Field v. Fisher*, 65 Id. 606.

Appeal from Wayne. (Speed, J.) Argued October 19, 1887. Decided November 10, 1887.

Bill to enforce trusts under assignment by appointment of receiver, etc., and petition by mortgagee for payment of her mortgage. Appeal by receiver from order directing payment of mortgage debt. Decree affirmed. The facts are stated in the opinion.

*Griffin & Warner*, for petitioner.

*Hoyt Post* (*George W. Radford, Frank D. Andrus, Julian G. Dickinson*, and *Edmund Haug*, of counsel), for receiver and appellant.

CHAMPLIN, J. Defendant Stebbins is the receiver of the Scranton & Watson Lumber Company, which, on the nineteenth day of August, A. D. 1886, executed a common-law assignment for the benefit of all of its creditors, without preferences, to one James Dewey. He having failed to qualify, defendant was, on application of certain creditors, appointed receiver by the circuit court for the county of Wayne to execute the trusts of the assignment.

The assignor was a corporation organized under the laws of this State. The corporators were J. P. Scranton, Harvey M. Mixer, and Joseph E. Watson. Prior to the incorporation, Scranton and Mixer were engaged in the lumbering business in the city of Detroit, as copartners, under the name of J. P. Scranton & Co. Watson was also engaged in business at East Jordan, Michigan. In forming the corporation it was agreed that J. P. Scranton & Co. should put into the corpora-

tion as capital the assets of that firm, and that the corporation should assume and pay the debts and liabilities of the firm, and the same agreement was made with respect to the assets and debts of Watson.

The corporation was organized about the first of October, 1885, and carried on business and acted as a corporation to the time of the assignment.

The firm of J. P. Scranton & Co. was indebted to Mary W. Whipple for money borrowed to the amount of $5,000, which was one of the debts which the corporation assumed and agreed to pay. At the time of the assignment, such indebtedness was evidenced by two promissory notes, one dated October 1, 1885, payable in one year to the order of Mary W. Whipple, for $2,000, signed by J. P. Scranton & Co., and indorsed, "Scranton & Watson Lumber Co., H. M. Mixer, Treas." The other note was dated August 2, 1886, payable three months after date to the order of Mary W. Whipple, signed by J. P. Scranton & Co., and indorsed, "Scranton & Watson Lumber Co., H. M. Mixer, Treas."

On the eighteenth day of August, 1886, the corporation executed a chattel mortgage to Miss Whipple to secure the payment of the indebtedness evidenced by the above notes, which was filed in the city clerk's office on the nineteenth day of August, 1886, at 8 o'clock and 55 minutes, and the assignment was executed at 9 o'clock and 10 minutes on the same day.

The corporation became embarrassed financially, and on the eighteenth day of August over $4,000 of its notes went to protest. A few days previously certain drafts, drawn by the corporation and sent to Cleveland to be accepted by one Smith as an accommodation, had been returned unaccepted, and Mr. Mixer and Mr. Scranton took advice of their counsel as to the best course to pursue under the circumstances in which the corporation was placed. Their counsel advised them to secure Miss Whipple, and a chattel mortgage was

then and there drawn up and executed, which Mr. Mixer handed to his wife to deliver to Miss Whipple, which she did, and Miss Whipple accepted the security and returned it to Mrs. Mixer, who handed it to Mr. Mixer the same evening. The next morning he handed it to his counsel, who caused it to be filed at the hour above stated.

It appears that at the interview at which the chattel mortgage was drawn the advisability of making an assignment was talked over and contemplated. Both Scranton and Mixer testified that they had not finally concluded to make an assignment until they executed it on the morning of the nineteenth. But the testimony is convincing that they fully intended to do so on the eighteenth, when they executed the chattel mortgage. This conclusion inevitably follows from what was done on the eighteenth. They arrived at their counsel's office at about 2 o'clock, and stated to him their situation. At 3:55 o'clock they sent the following telegram to Mr. Watson, viz.:

"THE WESTERN UNION TELEGRAPH COMPANY.

"Time filed, 3:55.                    DETROIT, August 18, 1886.
"To J. E. WATSON,—
          "East Jordan, Mich.:

"We find it necessary to make an assignment. Must have your concurrence this afternoon. Please wire your consent this afternoon. Answer by messenger.
                              "H. M. MIXER,
                              "J. P. SCRANTON."

Watson answered by telegraph, as follows:

"THE WESTERN UNION TELEGRAPH COMPANY.

"Time received, 8:20.
          "Dated EAST JORDAN, MICH., Aug. 18, 1886.
"To H. M. MIXER or J. P. SCRANTON,—
              "Franklin and Dubois:
"I agree to the assignment.
                              "JOS. E. WATSON."

The attorney set about preparing the assignment on the afternoon of the eighteenth, although it was not fully com-

pleted until the next morning. When Mr. Dewey, the assignee, was notified it does not appear, but he came to their counsel's office on the morning of the nineteenth, and joined in the execution of the assignment. I have no doubt but that the officers of the corporation intended to make the assignment, which was prepared on the eighteenth and executed on the nineteenth, at the time they executed the mortgage to Miss Whipple, and that it was substantially one transaction, and that the two instruments were to all intents and purposes cotemporaneous.

It also appears that, in the transactions between the firm of J. P. Scranton & Co. and Miss Whipple, she was represented by Mrs. Mixer, the wife of H. M. Mixer. Mrs. Mixer was Miss Whipple's sister-in-law. She made the loans to the firm for Miss Whipple, received the interest paid on the notes for Miss Whipple, and was the custodian of the notes for her. She says that she left her papers with Mrs. Mixer because she was boarding, and thought they would be safer with her than at her boarding-place. She says that she had no knowledge or expectation that the assignment was contemplated, or was about to be executed; that she had several times spoken to Mrs. Mixer, and told her she wanted security for the money loaned; and it appears that Mrs. Mixer had communicated her request to Mr. Mixer, and he had promised that security should be given. Mr. Mixer says that he was willing to give her security, and Mr. Scranton says he objected, because the giving of security would injure their credit.

It also appears that Mr. Mixer, before he delivered the chattel mortgage to his wife, told her of their embarrassment, but did not tell her that they had talked of or intended to make an assignment.

The mortgage was executed in the corporate name by Scranton as vice-president and secretary, and Mixer as treas-

urer. Watson was not consulted, and of course gave no con-
sent. There was no meeting of the board of directors, and
no corporate action taken by resolution or otherwise. But
by resolution adopted by the board the above-named officers
were given general authority to manage and conduct the bus-
iness.

The statute forbids, because it prohibits, any debtor who
makes a common-law assignment from preferring one cred-
itor over another. It also forbids any such assignment unless
it be of all the debtor's property, except such as is exempt
from execution.

As we have before said, the main object of the statute is to
prevent a failing debtor from preferring one creditor over
another, and to insure an equal distribution of the debtor's
property among all his creditors. It is, however, neither an
insolvent nor a bankrupt law. It affords no discharge to
the debtor who has surrendered all his property to satisfy the
claims of his creditors. It does not declare preferences, by
way of payment or security before making the assignment,
void. It provides no means by which the assignee can
recover from a creditor so preferred payments made or
property pledged.

The greatest extent to which the law goes is to authorize
the assignee to recover all property, or right or equities in
property, which might be reached or recovered by any of the
creditors of such assignor. This does not authorize the
assignee to recover a payment made by way of preference to a
*bona fide* creditor before the assignment, nor to attack the
validity of a mortgage given to secure the payment of a *bona
fide* indebtedness. No creditor could successfully attack such
mortgage if the assignment had not been made, and, unless
prohibited by law, a debtor has a right to secure a *bona fide*
indebtedness to his creditor, although such act may operate
to prefer him over other of his creditors.

The law does not declare such preferences fraudulent; they are not fraudulent in fact. Preferences are void only in common-law assignments because forbidden by statute. The statute inhibits the debtor from preferring a creditor in the instrument. If it is done by another and separate instrument cotemporaneous with the assignment, it can only be held void as an evasion of the law by the parties to the instrument. The purpose must be mutual by the mortgagor and mortgagee, for, no matter what the intent of the mortgagor is with reference to evading the law or committing a fraud upon it, such intent cannot affect the validity of a security otherwise valid given to a person who is innocent of such intent, and who does not knowingly participate therein. *Heineman v. Hart,* 55 Mich. 76; *Root v. Potter,* 59 Id. 498; *Sweetzer v. Higby,* 63 Id. 13; *Field v. Fisher,* 65 Id. 606.

The total absence of enactments necessary in order to effectuate the intention of the law to secure an equal distribution of all the debtor's property among all of his creditors, and to recover preference made with an intent to evade its provisions, renders the law but little better than a dead letter upon the statute book.

We are satisfied that the debt to Miss Whipple was one that the corporation had assumed, and was obligated to pay; that it was a *bona fide* liability of the corporation, which it had a right to secure.

The chattel mortgage appears to us to be a valid instrument, and was received by the petitioner without notice or knowledge that the corporation or its officers intended to make a general assignment for the benefit of its creditors. It was therefore a valid security in her hands, and under the stipulation made in the cause whereby she consented to the sale of the property by the receiver, and that he should hold the fund subject to her lien if established, she is entitled to payment of her mortgage debt out of such fund, and the decree of the court below is affirmed.

The costs will be paid by the receiver out of the general fund in his hands as receiver.

SHERWCOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.