JAMES K. BURNHAM ET AL. v. WILLIAM HASKINS ET AL.

*Assignment for benefit of creditors—Fraudulent preferences.*

1. A mortgage executed contemporaneously with an assignment for the benefit of creditors, and designed to give the mortgagees a preference, is void, and will be so declared by the chancery court at the suit of other creditors, on the refusal of the assignee to contest its validity.

2. The rule laid down in *Root v. Potter*, 59 Mich. 506, has been strictly adhered to, and the Court have uniformly upheld securities taken by a creditor for a *bona fide* indebtedness, under circumstances and testimony that convinced the Court that the creditor had no notice or knowledge that the debtor contemplated the making of a general assignment, or where the acts of giving the security and making the assignment were done in such time and manner as not to be parts of one and the same transaction. *Root v. Harl*, 62 Mich. 420; *Sweetzer v. Higby*, 63 Id. 13; *Whipple v. Stebbins*, 67 Id. 507.

Appeal from Clinton. (Newton, J., presiding.) Argued November 8, 1889. Decided December 28, 1889.

Bill to declare a chattel mortgage, executed contemporaneously with an assignment for the benefit of creditors, void as an illegal preference. Complainants appeal from decree dismissing bill. Reversed, and decree entered as prayed for. The facts are stated in the opinion.

*O. L. Spaulding,* for complainants

*H. E. Walbridge* and *Randall & Corbin,* for defendants.

CHAMPLIN, J. On November 14, 1887, George V. Goodrich, of St. Johns, Mich., executed a chattel mortgage to his step-father and his mother, William and Eliza Haskins, covering his entire stock of dry goods and millinery goods, and all store fixtures and furniture, being substantially all the property he owned or possessed. The mortgage was given to secure an indebtedness claimed to be due to the one and the other of the mortgagees, amounting to $2,230.98, which was to be paid, with interest at 7 per cent., on or before January 1, 1888. This indebtedness was made up as follows: One note and interest to date of mortgage, $247.03; one note and interest, $232.79; money loaned, $39.85; for board of Goodrich's child, 80 weeks, at $3 a week, $240; balance of board-bill of Goodrich's wife, $39.20,—all due to William Haskins; also one note and interest to date, due to Eliza Haskins, $697.51; another note due to her, with interest, $234.60; and a conditional liability of William Haskins, as surety upon a bond given by Goodrich in certain divorce proceedings instituted by his wife, $500; making a total of $2,230.98, as above stated.

The mortgage was drawn by H. E. Walbridge, an attorney, in his office at St. Johns, and there were present during the time of its preparation William Haskins, Mr. Goodrich, and Mr. Walbridge. Mr. Goodrich had been in embarrassed circumstances financially for some time. His step-father and mother lived at Dundee, Mich., and about a week before the mortgage was drawn Goodrich visited Dundee, saw Mr. Haskins, and told him that he was embarrassed, and spoke particularly of his indebtedness to complainant Burnham, and offered to give Haskins a chattel mortgage. He also told his mother

about his embarrassments, and spoke about making an assignment. It was arranged that day that William Haskins should go to St. Johns soon,—in a few days,—and secure what he was owing to his mother and to Haskins, by a chattel mortgage. A short time prior to executing this mortgage Goodrich had spoken to Walbridge about what was necessary to do to make an assignment.

The chattel mortgage was filed in the clerk's office in the village of St. Johns at 11 o'clock in the forenoon of the 14th. Between 11 and 12 o'clock of the same forenoon, O. L. Spaulding went to the clerk's office, and found this chattel mortgage on file, and immediately went across the street to the store kept by Goodrich, and found it closed and locked, and a notice upon the store door that an assignment had been made to Henry E. Walbridge. The assignment introduced in evidence bears date November 14, 1887, and conveys all of Goodrich's property to Walbridge in trust (except exemptions) to pay debts, without preference.

Walbridge testifies that the parties came to his office between 8 and 9 o'clock in the morning, and requested him to draft the mortgage; that they figured up the interest, and ascertained the amount of the indebtedness there, which was inserted in the mortgage; that, while there, nothing was said about an assignment; that both left together, and Goodrich immediately returned, and requested him to draft an assignment, which he did.

The complainants are six firms, who were creditors of Goodrich at the time of the assignment, whose claims aggregate the sum of $3,430.55, who applied to the assignee, and requested him to contest the validity of the chattel mortgage, and which he refused to do, on the ground that he believed it to be a valid mortgage. The complainants state that the nominal value of the stock of goods covered by the mortgage is $4,100 or thereabouts,

but that the real value is much less; that Goodrich intended that the mortgage should operate as a preference to Haskins and his wife over the other creditors of Goodrich; that at the time he executed the mortgage he intended to make an assignment, which fact was well known to Mr. and Mrs. Haskins, who received the mortgage with the unjust and fraudulent intent of obtaining such preference; and that Goodrich was indebted in the sum of about $4,100, exclusive of the mortgage. They pray that the mortgage may be declared void, as an illegal preference, and that Walbridge be enjoined from paying over to the mortgagees the proceeds of the assigned property in preference to other creditors.

The assignment and mortgage were contemporaneous, and must be regarded as one transaction. The testimony, which it would be useless to recapitulate, satisfies us that the mortgagees well knew of the intention of Goodrich to make an assignment at the time the mortgage was executed, and that the design of the parties to the instrument was to give the step-father and mother a preference over other creditors in the conveyance he was about to make for their benefit. The statute declares—

"That all assignments, commonly called 'common-law assignments,' for the benefit of creditors, shall be void, unless the same shall be without preferences as between such creditors." How. Stat. § 8739.

In *Root v. Potter*, 59 Mich. 506 (26 N. W. Rep. 682), it was said:

"There is nothing in the assignment law which undertakes to avoid dealings previous to the assignment, whether near or remote in point of time, which were in no way connected with it in the intention of the parties. Retroactive operation which would divest lawfully vested rights is not in harmony with our laws. The statute only makes preferences void which are made by the assignment itself, and this, by the largest possible construction, cannot go beyond such acts as are done in

such a time and manner as to be parts of the same transaction, and within the same disposition, whereby the debtor's entire estate is applied to the payment of all his debts. In other words, the preferences, to come within the language and the mischief of the statute, must be made in separate form to avoid the effect which the statute would operate of annulling them if they were included in the assignment itself."

In *Root v. Harl*, 62 Mich. 420 (29 N. W. Rep. 29), the mortgages which had been previously executed by the assignor were disposed of upon the principles above laid down in *Root v. Potter*. The question came before the Court again in *Sweetzer v. Higby*, 63 Mich. 13 (29 N. W. Rep. 506), in which it was said that—

"The evidence satisfactorily shows that all the debts secured by the Higby mortgage and notes were *bona fide*, and that none of the parties thus secured were aware of the intent of Camp and Morrill to make an assignment."

In *Whipple v. Stebbins*, 67 Mich. 507 (35 N. W. Rep. 94), it was said:

"Preferences are void only in common-law assignments because forbidden by statute. The statute inhibits the debtor from preferring a creditor in the instrument. If it is done by another and separate instrument, cotemporaneous with the assignment, it can only be held void as an evasion of the law by the parties to the instrument. The purpose must be mutual by the mortgagor and mortgagee, for, no matter what the intent of the mortgagor is with reference to evading the law or committing a fraud upon it, such intent cannot affect the validity of a security otherwise valid given to a person who is innocent of such intent, and who does not knowingly participate therein."

And it was found as a fact in that case that the mortgage was received by the creditor without notice or knowledge that the mortgagor intended to make an assignment for the benefit of creditors.

We have adhered strictly to the rule laid down in *Root v. Potter*, and have uniformly upheld securities taken

by a creditor for a *bona fide* indebtedness, under circumstances and testimony that convinced us that the creditor had no notice or knowledge that the debtor contemplated the making of a general assignment, or where the acts of giving the security and making the assignment were done in such time and manner as not to be parts of one and the same transaction.

The time and manner of executing the mortgage and assignment involved in this case are such as to stamp them as parts of one transaction. From the whole testimony in the case, we cannot escape the conclusion that they were made in separate form to avoid the effect which the statute would operate of annulling them if they had been included in one instrument. Mrs. Haskins testifies frankly, and no doubt honestly, that at the time Goodrich was there, a few days before the mortgage and assignment were executed, and while they were talking about giving the chattel mortgage, he said he wanted their advice in regard to his debts, and said he was so embarrassed that he would have to do something.

"He did not decide at that time to make an assignment, but I think he stated that he did not know but that he would be obliged to. I heard him talking with his father about it."

This testimony is corroborated by the witness Corwin, to whom Mrs. Haskins stated that Goodrich was down there just prior to the assignment; that he had told them that he was in trouble, and had got to make an assignment in order to secure them. It is needless to particularize further.

The decree of the circuit court must be reversed, with costs of both courts, and a decree entered declaring the chattel mortgage void, and that the proceeds of the sales of the property covered by the mortgage be distributed *pro rata* among the creditors of said Goodrich, in accordance

with the statute, without preference. The record and decree will be remanded to the circuit court from which the appeal was taken for such other proceedings as may be necessary.

The other Justices concurred.