HERMAN FUNKE ET AL. v. JOHN CONE ET AL.

*Assignment for benefit of creditors—Bill to enforce trust—Evidence.*

1. Complainants filed a bill, as creditors, to enforce the trust created by a general assignment by their debtor of his property, alleging the invalidity of certain chattel mortgages and other transfers made by the assignor, and asking that they be decreed void, and for a receiver. The assignee and mortgagees answered fully, and did not question the *right* of complainants to litigate the questions, which were passed upon by the court, and the relief prayed for granted.

    *Held*, that the question of the necessity of applying for leave to file the bill must be deemed waived.

2. Where in *such* a case the complainants are obliged to call the

assignor as a witness to obtain those facts which it was his duty to *voluntarily* lay before the court and jury, the complainants are not so far bound by his testimony that they may not contradict him when necessary to ascertain the truth of the matters queried after. His testimony must go for what it is intrinsically worth, like that of any other witness, and the fact of the complainants calling him should give it no additional weight.

Appeal from Wayne. (Howell, J. presiding.) Argued February 11 and 15, 1887. Decided April 28, 1887.

Bill to enforce trust under assignment. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*J. G. Dickinson* (*H. M. Duffield,* of counsel), for complainants.

*Dickinson, Thurber & Hosmer* (*Levi T. Griffin,* of counsel), for defendants.

SHERWOOD, J. The bill in this case is filed by the complainants, who are creditors of the defendant John Cone, against said defendants, to enforce the trust created under a general assignment made by John Cone to Simon Cohen.

Defendants Henry Cone and Hiram Exstein are residents of Buffalo, New York, and defendants Simon Cohen and John Cone reside in Detroit, where the latter, prior to July, 1881, carried on the business of merchandising, and had for the previous 15 years.

The bill of complaint charges that John Cone, previous to the last date, and down to the time of making the assignment hereinafter mentioned, did a prosperous wholesale mercantile business on Michigan Grand avenue, Detroit, and had abundant credit among those with whom he dealt.

The bill further avers that John Cone had on hand and purchased from January to the thirteenth of July, 1881, goods to the amount of over $47,000; that during this period his business was good and profitable, and that his sales, complainants aver from their knowledge derived from Cone, and

his business, amounted to $50,000, and were profitable; that during said six months said John Cone had not had any known misfortunes or business embarrassments; neither had he, so far as complainants could learn, paid out to complainants, who are his creditors, any moneys; but on the thirteenth day of June, 1881, he chattel-mortgaged his stock of goods to the defendant Hiram Exstein for the sum of $5,243.42, and on the thirteenth day of July thereafter gave another mortgage on the same goods to the defendant Henry Cone for the sum of $6,450; and, in ten days after giving the last-mentioned mortgage, the said John Cone made a general assignment of his property for the benefit of all his creditors to the defendant Simon Cohen.

The bill further avers that said Henry Cone is the brother of the said John Cone, and that Hiram Exstein is brother-in-law to Henry Cone; that the complainants are among the schedule creditors of John Cone; that said chattel mortgages were made in contemplation of the making of the assignment, and that all were made to cheat, defraud, and delay the creditors of John Cone, and not in good faith, and that, if there was any consideration for said mortgages, it was promised by the mortgagees for the purpose and with the intent to obtain a preference over the mortgagor's other creditors; that the assignor has not stated and included in the inventory filed with his assignment all his property, and has not delivered to the assignee all his property and effects, but still retains control of the same; that said John Cone did not assign all of his property to the said Simon Cohen; that it was understood by all the parties, when the mortgages were made, that the mortgagees were to be regarded as preferred creditors when the assignment should be made, and that they were made with the intent to cover up and conceal the property of the assignor, and deprive other creditors thereof, and a large portion of which was purchased by him of the complainants, and for which he is now indebted to

them; that they have duly proved and filed their claims under said assignment, and are now entitled to the benefit of the trust properly administered.

That, at the time the assignment was made, the defendant John Cone was indebted, for the goods purchased during the previous six months to replenish his stock, to the amount of $37,000, and turned over of proceeds of his business, left at that time, to his assignee, the sum of $68.73, and the inventory on file shows there was then remaining of the stock an amount valued at $15,926.56, and from the sales of which the assignee reports he received $5,342.61.

Complainants further aver that the assignee is not acting in good faith in the performance of the trust, nor for the best interest of the creditors; that John Cone is in possession and control of the assigned property, and has the management and sale thereof, and is allowed to retain the proceeds thereof, and carry on the business substantially as before the assignment was made; and that said assignee refuses to permit complainants to examine the assignor's books relating to the business; neither will he nor his attorneys allow complainants' attorney to examine them.

That on the eighteenth day of November, 1881, said assignee made a bill of sale of the entire stock of goods assigned to him by John Cone to said Hiram Exstein for the sum stated at $6,500, and that said bill of sale is filed in the city clerk's office in Detroit; and complainants aver that no consideration was received by the assignee for said goods, and no inventory is given showing what the goods were, and that said bill of sale was made in furtherance of the same scheme of fraud hereinbefore mentioned; that such sale was not under any order of the court, but was private, and in fraud of the best interests of creditors.

And the bill further charges that the giving of the mortgages and making the assignment were all one transaction, and for the same purpose,—to defraud complainants; that

they have good reason to believe, and do believe, that the mortgagor does not owe the mortgagees the sums of money claimed by them thereon in their proofs filed in the matter, and that the assignee, on proper request made, refused to contest said claims; that his attorneys are the mortgagees' attorneys, and also the mortgagor's attorneys; and that all the defendants are colluding together to cheat and defraud the complainants.

Complainants further charge, upon information and belief, that the assignor in this case has $30,000 worth of his property that he has not turned over to his assignee, in fraud of the complainants' rights, and that the assignment was made for the express purpose of being used to cover up said property, and keeping it beyond the reach of creditors; and complainants further aver that the said assignee has not sought or asked said John Cone to account to him for all the property belonging to the claimed insolvent estate, and intends to make no effort whatever to discover what may be yet obtained of it, and that he wholly neglects to execute and carry out the trust created under the assignment for the best interests of the creditors.

And they pray for an answer under oath, and, further, that the chattel mortgages may be set aside as fraudulent against creditors; that the claims of Henry Cone and Hiram Exstein may be contested; that John Cone may be decreed to account to complainants as regards all property belonging to the insolvent estate, and not heretofore delivered to the assignee, and also account for all such property as he may have disposed of since the making of the assignment; that said bill of sale to Exstein may be decreed invalid, and a receiver appointed to carry out the trust created under the assignment; and that they may have such other relief as shall be equitable.

Two answers were filed to the complainants' bill, one by Henry Cone and Hiram Exstein, and the other by Simon Cohen and John Cone. The same solicitors appear in both

cases, and the answers are both verified. In their answers they admit the making of the assignment and mortgages as charged; also that John Cone has been carrying on business in Detroit many years, and the character of the business; that he had a fair credit; that he purchased, during the six months preceding the assignment, $37,000 worth of goods; that Dickinson, complainants' attorney, was refused permission to look at John Cone's books; the filing of the assignee's report, as alleged in the bill; and the giving of the bill of sale to Exstein. They admit that the assignee has been requested to contest the claims of Henry Cone and Hiram Exstein, and admit that the sale to Exstein was without leave of the court. All the other material allegations in the bill are denied.

A large volume of testimony was taken in the case before commissioners, and reported to the court, and the case was heard on pleadings and proofs before Hon. Andrew Howell, judge of the First circuit, who rendered a decree substantially in accordance with the prayer of the bill. All the defendants appeal.

The bill in this case presents a state of facts clearly entitling the complainants to relief, and calls upon the defendants to make full, clear, and unexceptionable answer. We do not think the answers are of that character.

The indebtedness of John Cone, at the time he made his assignment, was shown to be, by his schedules, $48,950.41, all of which was contracted within six months immediately preceding the assignment, with the exception of $278.46, which was contracted eight months before, and all was for merchandise, except $11,693.42. The schedules also show that, when the assignment was made, there remained only an old stock and some broken packages, inventoried at about $15,000, and about $62 in money, notwithstanding the assignor received goods for over $37,000 of the claimed indebtedness.

These facts, taken in connection with the other facts that the assignor had been for 15 years a good business man in Detroit, carrying a large stock, doing a large business, and meeting with no disasters or pecuniary misfortunes, are not well calculated to impress the court with a very favorable view of the assignor's situation. And when, in addition to these facts, it appears that a relative of the assignor is made the assignee, and two of the largest creditors filing claims against the estate are a brother of the assignor, and a brother-in-law of the former, and that such claims are based upon notes given to them to the amount of said $11,693.42, and each secured by chattel mortgage, and bearing different dates, but in fact made the same day and at the time of the assignment, covering the entire stock, including that assigned, the court has a right to expect and have from the defendants an answer giving a candid, full, and unequivocal statement of all the doings of the assignor and his assignee, answering all material allegation contained in the bill. This they were asked to do by the complainants, and to make oath to the same. We do not find that they have done so. Their answer is not at all satisfactory to the court.

A single instance will illustrate the general character of the answer. The bill avers that, during the six months preceding the assignment, the assignor's sales were $50,000. In answering this averment, the assignor says he—

"Denies that his sales, during the said period, were anything like the sum of fifty thousand dollars; and avers that whatsoever money was received by the said John Cone during that period, either from the sales of his said stock, from his collections or otherwise, was used by the said Cone in paying his living expenses and his honest debts."

Very little information is derived from this answer as to the amount of money he actually did receive during said period. His creditors and the complainants are only informed that the sales did not amount to $50,000, and no

information is given whatever as to whom he paid it. These were the only facts the court wanted to know upon that subject, and the assignor gives it no information whatever.

John Cone's testimony is far from being such as might have been expected from one who must necessarily have known the facts as to all material matters charged in the bill. There is a want of certainty running through the whole of it which does not usually characterize the transactions of good business men.. It is impossible to make out from the testimony of the assignor what his indebtedness was at any time before the assignment was made, or what his assets were; and, if resort is had to the books, the dilemma is still greater. The following extracts from his testimony will show an effort in this direction.

"*Q.* Do your books show how much you were indebted prior and up to the time you made your January inventory of 1881?

"*A.* If they show, they are there.

"*Q.* Do they show?

"*A.* You can look and see if they do.

"*Q.* I want you to tell me.

"*A.* There the books are.

"*Q.* Will you look at them, and see whether they contain all of the indebtedness that you owed up to and including the time of the January inventory of 1881?

"*A.* I say those books contain all the outstanding accounts up to January, 1881.

"*Q.* And your indebtedness?

"*A.* They include all my indebtedness for merchandise.

"*Q.* Was there any other indebtedness not put in your books of account?

"*A.* Only accounts for merchandise are in the books. * * *

"*Q.* Will you tell me what other indebtedness there was prior to January when that inventory that you have testified to was made?

"*A.* I could not tell you that. * * *

"*Q.* Can you tell by an examination of the list of creditors?

"*A.* I could not."

This may be regarded as a fair specimen of the testimony upon this subject; but he finally declined to make any further statement relating to what his books of account contained, and in several instances his statements do not agree with what appears upon his books. His answer states he had "divers losses and misfortunes in his business." His testimony shows no losses; and his books, so far as they show anything upon the subject, during the period of about 19 months. preceding the making of the assignment, show the losses amounted to only about $400 in doing a business aggregating not far from $112,000. And he states that the business and profits were about the same then as they had been during the several preceding years. It is not pretended that he did not sell his goods at a profit all the time.

In relation to the mortgages, John Cone says they were both given at the same time, for—

"Money received some few days before. I didn't tell my attorney the extent of my indebtedness at that time. I didn't know how much it was."

He further says he had not given to Exstein or Henry Cone, or to anybody in their behalf, a statement showing the amount of goods on hand, and the amount he was owing at the time the mortgages were given, and they called for nothing of that kind, and he had no correspondence in regard to the mortgages with Exstein. Does not know what the intention of the mortgagees was in taking the mortgages, and does not know why they called on him for those securities. None of his paper had gone to protest, and he could not tell how much he owed, or when his indebtedness accrued, and never had given his brother a mortgage before.

That a brother and brother-in-law, without any more knowledge of the situation of the mortgagor than is shown in this record, should send a lawyer from Buffalo to Detroit to enforce collection of their claims against the defendant John Cone, or compel him to give security on his stock of

goods, under the circumstances stated, is utterly inconsistent with reason, or that comity which always exists between debtor and creditor among business men, to say nothing of the disregard of those friendly relations which are always supposed to exist among relatives, and which apparently did in this case. The consideration claimed for these mortgages is not satisfactorily explained by the persons who know all about it. Creditors have a right to such explanation, and to have the mortgages contested by the mortgagor's assignee. This they have been unable to obtain, or to be assured that any earnest, *bona fide* effort will be made in that direction.

Really, the testimony shows that no earnest effort has been made by the assignee to ascertain the amount and value of the property assigned to him, or whether it is all the assignor had at the time the assignment was made, but the most he seems to have done was to allow the assignor to retain, handle, and control the assigned property, and dispose of a large portion of the assigned stock to Henry Cone's brother-in-law, Exstein, and which was almost immediately thereafter transferred by him back to the wife of John Cone, he taking from her her individual notes in payment for the stock, without inquiry or question as to her responsibility. The account given of the transactions between John Cone and his wife, and Exstein and Henry Cone, contained in the record, does not bear, in our judgment, in any particular, the tests of good faith and fair dealing.

It is true that our assignment statute does not avoid honest transfers, or securities which are not in themselves general assignments (*Rollins v. Van Baalen,* 56 Mich. 610; *Root v. Potter,* 59 Id. 498; *Root v. Harl,* 62 Id. 420; *Sweetzer v. Higby,* 63 Id. 13); and it is equally true that the statute can never be used for the purpose of aiding in defrauding creditors.

There are but one or two questions of law raised in the case needing consideration.

The defendants claim that the complainants cannot in this suit attack the validity of the chattel mortgages, and cite several of our own cases as supporting their position. In *Sweetzer v. Higby*, 63 Mich. 21, this Court says upon this question:

"If the assignee refuses to move, or his interest be such that the court is satisfied that he ought not to direct or control the proceeding, the court below, upon proper petition, should grant leave to the creditor to file his bill."

In this case the benefit of a demurrer was not asked in either answer. The issue upon the validity of the mortgages was fairly made in the pleadings and upon the testimony. The assignee had been requested in writing by the creditors to contest the mortgages, and he had failed so to do. The testimony shows in the conduct and doings of the assignee he manifested more interest in the welfare of the assignor than in all the creditors. He did not allow complainants or their counsel to see his or the assignor's books. And, further than all this, it does not appear from the record that the question as to the right to litigate the validity of the chattel mortgages was raised in the court below, and we do not think that under all the circumstances the subject should now be considered, and that any necessity for an application for leave to the creditors to file their bill must be deemed waived.

We do not think the $71,000 and over received in cash by John Cone within the 11 months before his failure has been sufficiently accounted for, nor are we satisfied with the disposition of the assets by the assignee, or his efforts to ascertain the whereabouts of the money and property belonging to the insolvent estate, shown by this record.

When the complainants are obliged to call the assignor as a witness to obtain those facts which it was his duty to voluntarily lay before the court and jury, the complainants are not so far bound by his testimony that they may not contra-

dict him when necessary to ascertain the truth of matters queried after. His testimony must go for what it is intrinsically worth, like that of any other witness, and the fact of complainants calling him should give it no additional weight.

After an examination of all the testimony in the case, with the aid of the briefs of the learned counsel, we think Judge Howell came to the correct conclusion, and that his decree in the case should be affirmed.

The other Justices concurred.